Lucas Buckley, WSB #6-3997
Melissa K. Burke, WSB #7-5694
HATHAWAY & KUNZ, LLP
2515 Warren Avenue, Suite 500
P.O. Box 1208
Cheyenne, WY  82003-1208
307.634.7723 (telephone)
307.634.0985 (facsimile)
lbuckley@hkwyolaw.com
mburke@hkwyolaw.com

ATTORNEYS FOR DEFENDANTS
TEK RESOURCES LLC, JAMES
BAME, AND IPLA P.A.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| RALPH PETER JOHN HENRY, ROCHARD, an individual; and CON SMITH, an individual, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:23-cv-00194-ABJ |
| vs. | ) ) ) | |
| ONE WORLD MESSENGER LLC, a Wyoming Limited Liability Company; TEK RESOURCES LLC, a Wyoming Limited Liability Company, JAMES EDWARD BAME, an individual; and IPLA P.A., a California Professional Association, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS

Defendants Tek Resources LLC ("Tek"), James Edward Bame ("Bame"), and IPLA P.A.

("IPLA P.A.") by and through counsel, Hathaway & Kunz, LLP, submit the memorandum in

support of their *Motion to Dismiss* the *Amended Complaint* of Plaintiffs Ralph Peter John Henry

Rochard and Con Smith (collectively "Plaintiffs"), filed concurrently herewith. Defendant IPLA

joins in the arguments contained herein to the extent related to the lack of personal jurisdiction over IPLA and as to Counts III, V, and VI asserted against it. Collectively, Tek, Bame, and IPLA are referred to herein as "Defendants."[1]

## **FACTUAL BACKGROUND**

Plaintiffs assert in their *Amended Complaint* that they entered into "Investment Agreements" between themselves and One World (the "Contracts"). The Contracts between Plaintiffs and One World recited investments totaling approximately $350,000 into a blockchain based "Smart Contract." The Contracts provided that the investments were backed by physical precious metals and those metals were "secured under Trustee Management giving your investment extra security." Without further context, explanation, or obligation, the Contracts stated that Tek Resource, LLC was "Independent Trustee." Tek did not sign or otherwise ratify the Contracts. No fair reading of the Contracts indicates any legal services were provided at any time and no non-conclusory factual allegation is made that IPLA had *any* involvement in the transactions alleged in this case.

Instead of simply asserting a claim against One World for the apparent loss of the investment funds, Plaintiffs attempt to ensnare unrelated third-parties. Giving the most charitable reading possible to the claims against Defendants, Plaintiffs assert as follows:

- Bame is a licensed attorney in the State of California and the sole member of Tek. ¶ 8

---

[1] "Defendants" herein expressly *do not* include Defendant One World Messenger, LLC ("One World").

- The Contracts "listed Defendant TEK—and its owner Defendant Bame—as the independent trustee."[2] ¶28

- "Plaintiffs received a document from TEK—signed by Bame—that stated" Tek had been assigned certain interests by One World for the "control and operation" of certain precious metal mines. ¶ 29

- "TEK/Bame utilized a Wyoming registered address and the office address of Bame's law firm, Defendant IPLA." ¶30

- TEK, through Bame, had limited communications with Plaintiffs in 2019 and 2020. ¶¶ 31, 34-39.

- Bame and TEK had "never received *any* funds from [One World or MessengerFintech]." ¶ 39

Plaintiffs notably *do not* allege at any time any plausible facts that:[3]

- Any facts exist which could justify piercing the entity veil of limited liability between Tek and Bame individually.

- That Tek or Bame performed any legal services relating to the allegations in the Amended Complaint.

- That IPLA was in any way involved in the One World investments, that it had any role in the facts alleged in the Complaint, or that (even if the claims against Bame could

---

[2] Exhibits 3 & 4 to Plaintiffs' Amended Complaint purport to show some portion of a packet of documents include the Plaintiffs' respective one-page "Investment Agreements". On Exhibit 3 only, someone has handwritten next to the sole reference to Tek Resource LLC the name "James Bame".

[3] As appropriate under applicable law discussed herein, Defendants ignore all conclusory assertions of Plaintiffs which are devoid of factual enhancement.

survive this Motion to Dismiss) Bame was acting within the course and scope of his employment.

## LEGAL STANDARD

On a Motion to Dismiss, Fed. R. Civ. Pro. 12(b)(6) requires the Court to consider the facts in the light most favorable to Plaintiffs, and to grant the motion if those facts dictate that judgment should be entered as a matter of law. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). To survive a motion to dismiss under Rule 12(b)(6), a complaint's factual allegations, assumed to be true, must "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555; 547 (2007). In the context of a 12(b)(6) motion to dismiss, this plausibility standard requires the plaintiff to plead facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard does not require a plaintiff to show a defendant probably acted wrongfully, but it does require more than "a sheer possibility." *Id.* That is, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphases in original).

"Thus, mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*,

550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). The Court accepts the nonmoving party's well-pled factual allegations as true and construes them in the light most favorable to the nonmoving party, but it is not bound to accept an asserted legal conclusion as true. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991); *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Generally, the Court's review is strictly to that found within the complaint. However, in addition to the complaint, the court may consider documents referred to in the complaint if the documents are central to the plaintiffs' claim and the parties do not dispute the documents' authenticity. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (citing *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997)).

## ARGUMENT

### I.    Plaintiffs' First and Second Counts Fail to State a Claim Against Defendants.

Plaintiffs clearly allege the existence of the Contracts and, in fact, provide those Contracts to the Court as Exhibits 3 & 4. Both of the Contracts are entered into by the respective Plaintiff and by "MessengerFintech" as the counterparty. Those contracts are executed by "Gary James Wood" on behalf of MessengerFintech and were presumably countersigned by Plaintiffs. Plaintiffs clearly describe and define these Contracts in their Amended Complaint, *see* ¶¶ 16-28, and expressly allege a direct breach and breach of the covenant of good faith and fair dealing relating to these Contracts. ¶¶42-51. However, the fact that neither Bame nor Tek are parties to the Contracts is dispositive of the claims against them as to Counts I and II.

> The elements of a breach of contract claim are "a lawfully enforceable contract, an unjustified failure to timely perform all or any part of what is promised . . ., and entitlement of [the] injured party to damages." *Halling v. Yovanovich*, 2017 WY 28, ¶ 13, 391 P.3d 611, 616–17 (Wyo. 2017) (quoting *Schlinger v. McGhee*, 2012 WY 7, ¶ 12, 268 P.3d 264, 268 (Wyo. 2012), *as amended on reh'g*

(Feb. 7, 2012)); *see also Mantle v. N. Star Energy & Constr. LLC*,
2019 WY 29, ¶ 69, 437 P.3d 758, 784 (Wyo. 2019) ("elements of a
contract are offer, acceptance and consideration" (quoting *McLean
v. Hyland Enterprises, Inc.*, 2001 WY 111, ¶ 42, 34 P.3d 1262, 1272
(Wyo. 2001))).

*Peterson v. Meritain Health, Inc.*, 2022 WY 54, ¶ 22, 508 P.3d 696, 705 (Wyo. 2022).

Unsurprisingly, only the parties to a contract can attempt to enforce its terms against each

other and "[i]t is well settled that a non-party to a contract cannot be sued for breach of that

contract." *Id.*; *see also Rogers v. Wright*, 2016 WY 10, ¶ 30, 366 P.3d 1264, 1275 (Wyo. 2016)

(contract law "is designed to protect expectations bargained for in a contract"); *Cent. Contractors

Co. v. Paradise Valley Util. Co.*, 634 P.2d 346, 348 (Wyo. 1981) ("privity of contract is an essential

element [for] a cause of action on a contract"); *Larsen v. Sjogren*, 67 Wyo. 447, 472, 226 P.2d

177, 186 (1951) ("[t]he parties to a contract are the ones to complain of a breach") (quoting

*Williams v. Eggleston*, 170 U.S. 304, 309, 18 S.Ct. 617, 619, 42 L.Ed. 1047 (1898)). This Court

has also recently acknowledged that "[a] person is not made a party to a contract merely by being

named and described in it[.]" *Sinclair Wyo. Refinery Co. v. A&B Builders, Ltd.*, 2019 WL

13177821 at *15 (D.Wyo. June 11, 2019) (*quoting Lawrence v. United States*, 378 F.2d 452, 461

(5th Cir. 1967).

Therefore, Count I against Tek and Bame fails on its face. The Contracts are solely between

Plaintiffs and MessengerFintech and there is no indication or allegation that Bame or Tek are

parties to those contracts. At best, Tek (and Bame in a handwritten interlineation) are named in

those Contracts, but even this reference is insufficient to bind Tek or Bame to the terms. *Id.*

Similarly, Count II alleging a breach of the implied covenant of good faith and fair dealing

must fail as against Tek and Bame. In Wyoming the "implied covenant of good faith and fair

dealing requires that neither party commit an act that would injure the rights of the other party to

receive the benefit of their agreement." *Scherer Const., LLC v. Hedquist Const., Inc.*, 2001 WY 23, ¶ 19, 18 P.3d 645, 653 (Wyo. 2001). Here, as with the direct breach, neither Tek nor Bame are a "party" to the Contracts, and they have made no promises relating to the MessengerFintech/Plaintiffs Contracts. As such, Plaintiffs also fail to state a claim for breach of the implied covenant because they are not in privity of contract with Tek or Bame.

Presumably, Plaintiffs attempt to use the Tek "Mining & Asset Control" document, Exhibit 5, to shoehorn Tek and Bame into their breach of contract claims. However, neither the facts pled nor the document itself plausibly states a claim upon which relief can be granted. As indicated in Exhibit 5, the sole role of Tek *would have been* to control and operate the precious metal mines to produce resources, presumably for the repayment of investors of One World, such as Plaintiffs. Indeed, Plaintiffs acknowledge that their communications with Bame related to the "assets . . . in-ground" which "require that mining extraction and refining of the metal assets occur." Am. Compl. ¶ 34. However, the breached promise was One World's, which purported to guarantee returns on investment; it was not a failure of any in ground mining. In other words, Tek was to manage for One World any mining that may occur, but it was One World's breach of its promise to invest and create returns that has been alleged as the breach creating damages in this case.

However, even the above-analysis gives too much weight to the "Mining & Asset Control" document, as Plaintiffs do not even allege that the document constitutes a binding agreement, or that it was provided *to them* by Tek. Plaintiffs do not attempt to assign any legal significance to this document and speak of it, at best, passively. There is no allegation that the document represents a bargained for exchange between any parties (much less who those parties would be), that it is enforceable, that it was breached, or that any breach of that document caused them harm. *See* ¶¶ 29-30. Indeed, Plaintiffs allege only that the Contracts themselves were breached. *See* ¶¶ 42-51

Indeed, Plaintiffs assert that Tek and Bame have breached the Contracts (to which they were not a party) only by "fail[ing] to secure Plaintiffs' investment funds"; however, Plaintiffs also acknowledge that Bame and Tek never received these same funds in the first instance. ¶ 39. Because Bame and Tek never undertook any contractual obligation to Plaintiffs and further because Bame and Tek never took possession of any funds, Plaintiffs' Counts I & II must fail as a matter of law and should be dismissed.

## II.     Plaintiffs' Legal Malpractice and Negligent Supervision Claims Fail as a Matter of Law.

### i.     Legal Malpractice

"The elements of a legal malpractice claim are: the existence of a duty _arising from the attorney/client relationship_; the accepted standard of legal care; and the departure by the attorney from the standard of care which causes harm to the client." _Horn v. Wooster_, 2007 WY 120, ¶ 10, 165 P.3d 69, 72 (Wyo. 2007) (emphasis added). An attorney-client relationship is a specific type of fiduciary relationship that only arises when an attorney provides legal advice or representation to a client. _See Johnson v. Reiger_, 2004 WY 83, ¶ 24, 93 P.3d 992, 999 (Wyo. 2004).

Here, Plaintiffs fail to allege any attorney/client relationship which could underpin their legal malpractice claims. Instead, Plaintiffs merely allege that Bame is a licensed attorney and, therefore, seek to assert a legal malpractice claim against him.[4] The mere fact that a person is

---

[4] Relating to IPLA, Plaintiffs only conclusorily allege, without further factual assertions, that "Bame was acting within the scope of his employment" with IPLA. ¶ 58. This appears to be the sole basis for asserting any claim against IPLA. _Id._; _see also_ Count VI, ¶¶ 77-81. As such, to the extent there are no facts which could show Bame committed legal malpractice, no claim is stated against IPLA under, presumably, the doctrine of vicarious liability. _See Killian v. Caza Drilling, Inc._, 2006 WY 42, ¶ 7, 131 P.3d 975, 978-79 (Wyo. 2006) (noting that vicarious liability only attaches if an employee is negligent _and_ acting within the course and scope of his employment). Finally, _even if_ Bame committed legal malpractice, Plaintiffs fail to assert any plausible facts which establish that he was within the course and scope of his employment with IPLA in this case

licensed to practice law does not mean any negligence claim against him or her is a legal malpractice claim. *See id.* at ¶ 25, 93 P.3d at 999 (holding that "[f]iduciary relationships are extraordinary and not easily created. Because they carry significant legal relationships, they cannot be the product of wishful thinking"). In fact, Plaintiffs specifically allege that Bame was acting as an "Independent Trustee" as indicated in the Contracts (to which he was not a party). ¶ 53.

At best, there is one only one indication that Bame's status as an attorney was even known to Plaintiffs, and that is through his signature on the "Mining & Asset Control" document. ¶¶ 29-30, Exhibit 5. Even that document, however, at best would indicate that Bame acted as legal counsel for his own entity, Tek. *Id.* Such an inference detracts from the likelihood of Bame entering into an attorney/client relationship with Plaintiffs, however. If Bame is representing Tek, he clearly would not be representing Plaintiffs and cannot, as a matter of law, be liable to them for legal malpractice.

Even if Plaintiffs asserted a claim for legal malpractice upon which relief could be granted, such an action in Wyoming would be time-barred. Wyoming has a two-year statute of limitations for legal malpractice claims. Wyo. Stat. § 1-3-107(a)(i). To the extent applicable, California's statute is even more restrictive at one year. *Beal Bank, SSB v. Arter & Hadden, LLP*, 167 P.3d 666, 669 (Cal. 2007) (citing Cal. Civ. Pro. Code § 340.6). Despite some ambiguity in Plaintiffs' timeline, they clearly plead that, as of April 7, 2021, they were aware that Bame had "never received *any* funds from MessengerFintech and failed to secure any portion of Plaintiffs'

---

or that his actions served the interests of IPLA in any way. *Id.* Indeed, IPLA does not appear to be referenced or implicated in *any* document, communication, or allegation in the Amended Complaint.

investments."[5] ¶ 39. Plaintiffs further appear to allege in their Legal Malpractice claim (Count III) that the breach of Bame's duty of care was a purported failure to "secure their investments[.]" ¶ 53. Plaintiffs fail to allege any further facts which they discovered after April 7, 2021, which would trigger application of the discovery rule. *See Ballinger v. Thompson*, 2005 WY 101, ¶ 24, 118 P.3d 429, 437 (Wyo. 2005) (discussing the "discovery rule" which provides that the two-year statute of limitations for legal malpractice claims begins to run when a plaintiff knows or has reason to know of the existence of a cause of action). As such, more than two years passed between the alleged breach and the date of filing suit, October 18, 2023. Plaintiffs' claims are, therefore, also time barred.

ii. *Negligent Supervision*

Plaintiffs' Negligent Supervision claim (Count VI) asserted against IPLA similarly fails to state a claim upon which relief can be granted. There are no plausible facts pled which could meet this Court's pleading standard following *Twombly* and *Iqbal*.

"Unlike a claim of *respondeat superior*, a negligent supervision claim . . . is not based on imputed or vicarious liability, but rather on the employer's own negligence in failing to exercise due care to protect third parties from the foreseeable tortious acts of an employee." *Shafer v. TNT Well Service, Inc.*, 2012 WY 126, ¶ 10, 285 P.3d 958, 962 (Wyo. 2012) (relying on Restatement (Second) of Torts § 317.)

Plaintiffs' Amended Complaint is devoid of any factual allegation or assertion of what IPLA did or did not do, other than the conclusory allegation that it should have "adequately

---

[5] Plaintiffs also allege that their investments matured but were unpaid even earlier, on October 22, 2020, which would appear to have triggered any applicable statute of limitations at that earlier date. ¶ 32.

supervise[d]" Bame. ¶ 80. The conclusory allegations contained in Plaintiffs' Amended Complaint—especially relating to Count VI—are the very essence of the Supreme Court's admonition against "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678. Plaintiffs, to an extent, conclusorily assert, without support, that the entity veil for Tek should be pierced to find Bame liable. Plaintiffs then assert that Bame has some employment relationship with IPLA, which entity is wholly unrelated to and uninvolved with the transactions at issue, i.e. the Contracts *to which Tek is not even a party*. Even if there was some plausible duty of IPLA in this case, the duty is expressly pled as an obligation to follow the rules of professional conduct governing California lawyers, but those ethical obligations merely repackage Plaintiffs' legal malpractice claim, which is both time barred and factually unsupportable.

Even if a claim had been plausibly pled with the requisite factual enhancement, Plaintiffs have only pled that they believe Bame violated rules of professional conduct—which he did not. They have not pled anything other than conclusory assertions that IPLA failed to have "effective measures" to assure compliance or that it fails to take action to ensure compliance with the rules of professional conduct. In essence, Plaintiffs stack unsupported assertions on further unsupported assertions to attempt to hold an unrelated third party strictly liable for the purported actions of Bame's entity, Tek. Plaintiffs do not even have standing to assert a legal malpractice claim against Bame and they, therefore, cannot assert a negligent supervision claim which is derivative of the underlying malpractice allegation. *See Schlegel v. Barney & Graham, LLC*, 2023 WY 95, ¶ 19, 536 P.3d 231, 236-37 (Wyo. 2023) (holding that a third-party lacks standing to claim legal malpractice unless they were an intended third-party beneficiary to an attorney/client relationship). As such, Plaintiffs' Negligent Supervision claim asserted against IPLA must be dismissed.

### III.     Plaintiffs' Unjust Enrichment Claim Fails to State a Claim.

Plaintiffs further allege that Tek and Bame were somehow unjustly enriched by the facts and circumstances alleged in the Amended Complaint. While Plaintiffs appear to believe that at least One World was unjustly made richer by their investments, this is not synonymous with a legal claim for unjust enrichment under Wyoming law.

> Unjust enrichment (or *quantum meruit*) is an equitable remedy which implies a contract so that one party may recover damages from another. One seeking damages based on unjust enrichment must prove four elements:
> (1) Valuable services were rendered, or materials furnished,
> (2) to the party to be charged;
> (3) which services or materials were accepted, used and enjoyed by the party, and,
> (4) under such circumstances which reasonably notified the party to be charged that the plaintiff, in rendering such services or furnish such materials, expected to be paid by the party to be charged. Without such payment, the party would be unjustly enriched.

*Electrical Wholesale Supply Co., Inc. v. Fraser*, 2015 WY 105, ¶ 27, 356 P.3d 254, 261 (Wyo. 2015) (*quoting Bowles v. Sunrise Home Center, Inc.*, 847 P.2d 1002, 1004 (Wyo. 1993)).

Plaintiffs fail to state a claim upon which relief can be granted as against Tek and Bame for unjust enrichment. First, Plaintiffs acknowledge that they did not provide funds to Tek or Bame and that, in fact, Tek and Bame "never received *any* funds from MessengerFintech." ¶ 39. Further, Plaintiffs acknowledge that they were making an "investment with MessengerFintech" and attach the Contracts (Exhibits 3 & 4) and financial paperwork (Exhibit 2) verifying that they rendered funds only to One World and its affiliates. *See Jacoby v. Jacoby*, 2004 WY 140, ¶ 11, 100 P.3d 852, 856 (Wyo. 2004) (confirming that the benefits rendered must be made directly to the party to be charged).

Similarly, Plaintiffs' allegations acknowledge that their funds were not accepted, used, or enjoyed by Tek or Bame, nor did Tek or Bame ever indicate that anyone besides MessengerFintech was responsible for repaying the funds. The Wyoming Supreme Court has described the fourth element of unjust enrichment as actually constituting two elements. "Not only must the proponent of the theory prove that the circumstances were such that the other party was reasonably notified that the proponent expected to be paid for services rendered or materials furnished, but the proponent must prove that without such payment, the party would be unjustly enriched." *Id.*, ¶ 12, 100 P.3d at 856. Under the circumstances as pled by Plaintiff, only MessengerFintech would have a repayment obligation and so Bame and Tek were not on notice of an expectation of payment from them. Additionally, there is no indication of any enrichment—unjust or otherwise—for Bame or Tek. Plaintiffs have not, and cannot, plead such facts consistent with their pleading obligations to the Court.

Simply put, Plaintiffs contracted with MessengerFintech regarding an investment opportunity. Tek and Bame were never even able to undertake any obligations because, for some unknown reason, One World (or some affiliates controlled by non-party Kent Kristensen) diverted the funds before Tek (through Bame) could apply its expertise in the precious metal mining industry. Neither Tek nor Bame were unjustly enriched and, in fact, were similarly misled by Kristensen and his entities. Plaintiffs fail to plead a plausible claim for unjust enrichment against Tek or Bame and their Count IV should be dismissed.

Finally, while Tek and Bame were not parties to the Contracts, there is no dispute that those Contracts are valid, enforceable documents as against MessengerFintech. As such, Plaintiffs and MessengerFintech allocated the obligations and responsibilities relating to the investment of funds under those Contracts. Therefore, the remedies they are entitled to should be derived only from

their claims of breaches of those contracts and, consistent with Wyoming law, an unjust enrichment claim in derogation of those Contracts should be dismissed. *See Sowerwine v. Keith*, 997 P.2d 1018, 1021 (Wyo. 2000); *Safeway Stores 46 Inc. v. WY Plaza LC*, 65 F.4th 474, 484-85 (10th Cir. 2023) (noting that "an express contract normally prevents recognition of an implied contract under the guise of unjust enrichment"). Because Plaintiffs contracted with MessengerFintech, the terms of their agreement control and they should not be allowed to attempt to imply some other contract which never existed as between themselves and Tek or Bame. For this additional reason, their unjust enrichment claim should be dismissed.

### IV.   Plaintiffs' Negligence Claim Fails to State a Claim.

While styled simply as "Negligence," Plaintiffs' Count V appears to allege a negligent misrepresentation under Wyoming law. In Wyoming, the elements of the tort of "negligent misrepresentation are as follows: (1) defendant gave plaintiff false information in a transaction in which defendant had a pecuniary interest; (2) defendant gave the false information to plaintiff for the guidance of plaintiff in plaintiff's business transactions; (3) defendant failed to use reasonable care in obtaining or communicating the information; (4) plaintiff justifiably relied on the false information supplied by defendant; and (5) as a result of plaintiff's reliance, plaintiff suffered economic damages." *Mellon v. Int'l Grp. for Historic Aircraft Recovery*, 33 F. Supp. 3d 1277, 1284 (D. Wyo. 2014), *aff'd*, 612 F. App'x 936 (10th Cir. 2015).

Plaintiffs specifically allege that the economic damage they suffered was that they "invested in the project [to their] severe financial detriment." ¶ 76. As such, any misrepresentations must have predated their investment and, in reliance on the misrepresentation, caused them to invest to their detriment. However, Plaintiffs fail to allege any communications from Bame or Tek that predated their investment or could have engendered reliance. *See* ¶¶ 16-28. Subsequently,

even assuming (1) the statements attributed to Tek and Bame were made and (2) they were false, those statements *still could not state a claim for negligent misrepresentation* because Plaintiffs had already invested with One World/MessengerFintech and incurred all of the damages they allege in this case before ever communicating with Bame and Tek. Put another way, Plaintiffs damages would have been incurred irrespective of any alleged statements of Bame or Tek and irrespective of whether those statements were true or false. For these reasons, Plaintiffs fail to state a claim for negligent misrepresentation against Bame and Tek.

Even broadening the scope of actionable communications to the alleged post-investment statements from Tek through Bame, Plaintiffs do not identify any false statements made by these Defendants, instead only noting that Bame and Tek identified certain precious metal mines and the assets of those mines which had not yet been extracted. *See* ¶¶ 29, 31, 34, 37, 39. Plaintiffs do not allege the fact of asset backed in place precious minerals was false or misleading, *see* ¶ 34 (noting the assets are "in-ground and would require that mining extraction" occur before the security could be attached for repayment).

Plaintiffs' deficient claims against Bame and Tek[6] are further exacerbated by their own express pleading, alleging that the false information given to them was that "their investments were 100% asset-backed and secured and controlled by an independent trustee, with an all-risk insurance policy to fully protect the physical mining assets, which neglecting to mention that Plaintiffs' investments were neither controlled, nor secured by the Independent Trustee." ¶ 73. Plaintiffs do not appear to allege that any of these statements were made by Tek or Bame. To the extent Plaintiffs assert that Bame, through Tek, stated the investment was asset backed—by "in-

---

[6] Bame, Tek, and IPLA restate by this reference their prior arguments as to the failure to state any claim against IPLA under a vicarious liability theory as if set forth here in full.

ground" precious metals—they fail to allege that this statement was untrue. Instead, Plaintiffs only assert that the statements of MessengerFintech regarding control and an Independent Trustee were untrue. ¶ 73. These were not purportedly false statements of Bame or Tek and, therefore, cannot state a claim against them.

Additionally, Plaintiffs fail to allege, even conclusorily that Tek or Bame failed to exercise reasonable care relating to any statements they are alleged to have made. Plaintiffs' failures in this regard demonstrate both the implausibility of their negligent misrepresentation claim as well as their failure to put Bame, Tek, or IPLA on notice of the allegations brought against them.

As an independent bases for dismissal of the negligent misrepresentation claim, the Wyoming Supreme Court has

> previously indicated [in the context of a negligent misrepresentation claim] that tort theories may not be used to change the terms of a written agreement. Where the parties have a contractual agreement, "the contractual relationship controls, and parties are not permitted to assert actions in tort in an attempt to circumvent the bargain they agreed upon." *Snyder v. Lovercheck,* 992 P.2d 1079, 1087 (Wyo.1999); *see also Lee v. LPP Mortgage Ltd.,* 2003 WY 92, ¶ 27, 74 P.3d 152, 162 (Wyo.2003) ("[W]e have been rightfully hesitant to find tort causes of actions where a contract exists.").

*Pinther v. Ditzel*, 2007 WY 116, ¶ 12, 163 P.3d 816, 818 (Wyo. 2007). As above, while Bame, Tek, and IPLA are not parties to the Contracts, the allegations made are squarely within the scope of the Contracts and Wyoming law does not simply allow a party to reach outside the four corners of his or her bargain struck to attempt to mitigate the economic risk taken on under a contract.

The economic loss doctrine precludes "recovery in tort when a plaintiff claims purely economic damages unaccompanied by physical injury to persons or property." *Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Bd*., 929 P.2d 1228, 1234 (Wyo. 1996). "The

purpose of the 'economic loss rule' is to maintain the distinction between those claims properly brought under contract theory and those which fall within tort principles." *Id.* at 1234–35. One distinction between a tort claim and a contract claim is that "the controlling policy consideration underlying tort law is the safety of persons and property—the protection of persons and property from losses resulting from injury. The controlling policy consideration underlying the law of contracts is the protection of expectations bargained for." *Id.* at 1235. Thus, damages are classified as claims for injuries and claims for economic losses. *Id.*

Here, Plaintiffs' tort claims are barred because they only rely on claims for economic damages. *See Rissler*, 929 P.2d at p. 1234 (explaining that recovery in tort is barred when the claim is for purely economic loss without physical injury). The Amended Complaint specifically references throughout the damages sought are to be made whole on the Contractual investments. Plaintiffs do not—and cannot—allege anything other than economic damages and they allocated their risk through the negotiation and execution of the Contracts. The Court should, under the economic loss doctrine, decline to allow Plaintiffs to reallocate their risk outside of the Contract.

## V.     The Court Lacks Personal Jurisdiction Over IPLA.

The Plaintiff bears the burden of showing IPLA is subject to personal jurisdiction in Wyoming.  *See Newsome v. Gallacher*, 722 F.3d 1257, 1261–62 (10th Cir. 2013) ("To bring a suit, the plaintiff must show the defendants are subject to personal jurisdiction . . . . The Constitution allows for personal jurisdiction only when the requirements of due process are met"). To meet this burden, Plaintiffs cannot merely rest on the allegations in their Complaint and must produce sworn affidavits or other competent evidence, since a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 67 n. 9 (3d Cir. 1984).

Fed.R.Civ.Pro. 12(b)(2) allows the Court to dismiss a complaint upon motion of the defendant for "lack of jurisdiction over the person." "To obtain personal jurisdiction over [IPLA] a nonresident defendant in a diversity action, [Plaintiffs] must show that jurisdiction is legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far W. Capital, Inc. v. Towne,* 46 F.3d 1071, 1074 (10th Cir.1995) (emphasis in original).

In analyzing whether the Court has personal jurisdiction, the Court engages in a two-step analysis. First, it must initially determine whether the exercise of jurisdiction is "sanctioned by [Wyoming's] long-arm statute []," which is a question of state law. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Co-op.*, 17 F.3d 1302, 1304–05 (10th Cir. 1994). Next, the Court determines whether the exercise of jurisdiction "comports with the due process requirements of the [United States] Constitution." *Id.* A court considering a Rule 12(b)(2) motion may consider evidence outside of the pleading, such as affidavits or similar papers, to ascertain whether there is personal jurisdiction over the defendant. *See Niemi v. Lasshofer*, 770 F.3d 1331, 1347-48 (10th Cir. 2014)

Due process requires (1) that IPLA purposefully established minimum contacts within Wyoming and (2) that the assertion of personal jurisdiction would comport with traditional notions of fair play and substantial justice. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017); *Black Diamond Energy Partners 2001-A Ltd. v. S&T Bank*, 2012 WY 84, ¶ 19, 278 P.3d 738, 743. "Depending on their relationship to the plaintiff's cause of action, an out-of-state defendant's contacts with the forum state may give rise to either general (all-purpose) jurisdiction or specific (case-linked) jurisdiction." *Old Republic Ins. Co.*, 877 F.3d at 903 (10th Cir. 2017); *Black Diamond*, ¶ 21, 278 P.3d at 743.

General jurisdiction requires constant and pervasive contact with the forum state, akin to the forum state being a "home" state. *Old Republic Ins. Co.* 877 F.3d at 903-04. "Specific jurisdiction means that a court may exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state." *Old Republic Ins. Co.*, 877 F.3d 895 at 904. Here, neither form of jurisdiction may be asserted over IPLA.

Simply put, IPLA has no contacts with Wyoming. As discussed hereinabove, it was a stranger to all of the facts and circumstances pled in the Amended Complaint and has not been involved in the underlying facts. Plaintiffs do not even attempt to assert IPLA had any contacts with Wyoming, whether general or specific. *See* ¶ 9. IPLA was not a named party to the Contracts, or any other document or communication referenced in the Amended Complaint. On the face of the Amended Complaint, therefore, it is clear no *prima facie* case for jurisdiction exists. Any claims against IPLA are so attenuated that Tek must first be found liable, then Bame through a piercing claim. If both of those prerequisites are met, IPLA is conclusorily claimed to be vicariously liable or liable only for negligent supervision. None of the underlying facts or circumstances in the Amended Complaint even occurred in Wyoming, so it is equally clear that IPLA is degrees of separation farther removed from the specific facts in this case. No contention is made of specific jurisdiction or general jurisdiction, and none can be implied from the Amended Complaint.

As noted in the attached Declaration of Simon K. Shim, personal jurisdiction cannot be proven. **Ex. A** (Shim Declaration) IPLA is a California corporation with its principal address in Los Angeles, California. IPLA has no business contacts, physical presence, or marketing directed toward Wyoming or Wyoming citizens. IPLA is a patent processing company which is in the business of advising on transactional matters for clients with the United States Patent and

Trademark Office and utilizes licensed attorneys for some of its projects. Simon Shim is the sole shareholder of IPLA. Simon Shim has no contacts with Wyoming and has not ever travelled to the State. IPLA does not have any Wyoming clients and has not had Wyoming clients in the past. Exercise of jurisdiction over IPLA would be the literal first direct contact that entity would have with the State of Wyoming. These facts and circumstances certainly would offend traditional notions of fair play and substantial justice. *See Old Republic Ins. Co.* v. Co, 877 F.3d at 908-09.

**<u>CONCLUSION</u>**

Each of Plaintiffs' causes of action asserted against Tek, Bame, and IPLA fail to state claims upon which relief can be granted and must be dismissed. Plaintiffs fail to plausibly assert claims against these Defendants, opting instead for vague and conclusory recitals of elements and omitting substantive factual pleadings. These allegations fail to meet the pleading standards of this Court following *Twombly* and *Iqbal*. Additionally, the threadbare facts alleged, if proven, do not assert legally cognizable claims upon which relief could be granted. Finally, the Court lacks personal jurisdiction over IPLA and it must be dismissed on that basis.

**DATED** this 12th day of December, 2023.

TEK RESOURCES LLC, JAMES EDWARD BAME, AND IPLA P.A., DEFENDANTS

By: */s/ Lucas Buckley*
Lucas Buckley, #6-3997
Melissa K. Burke, #7-5694
HATHAWAY & KUNZ, LLP
P. O. Box 1208
Cheyenne, WY  82003-1208
(307) 634-7723
(307) 634-0985 (fax)
lbuckley@hkwyolaw.com
mburke@hkwyolaw.com

ATTORNEYS FOR DEFENDANTS

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on the 12th day of December, 2023, a true and correct copy of the foregoing was served upon counsel as follows:

Robert V. Cornish, Jr.   [✓] CM/ECF
680 South Cache Street, Suite 100 [  ] Fax:
P.O. Box 12200     [  ] E-mail:
Jackson, WY 83001    rcornish@rcornishlaw.com
*Attorney for Plaintiffs*

         */s/ Lucas Buckley*
         Hathaway & Kunz, LLP