# EXHIBIT 1

acunha@rcornishlaw.com

| | |
|---|---|
| **From:** | Robert Cornish, Jr. <rcornish@rcornishlaw.com> |
| **Sent:** | Thursday, December 7, 2023 11:25 AM |
| **To:** | Amanda Cunha |
| **Subject:** | FW: Case No. 1:23-cv-00194 Judge Alan Johnson |

# Robert V. Cornish, Jr.

*Managing Shareholder, Law Offices of Robert V. Cornish, Jr., PC*
680 South Cache Street, Suite 100, Jackson, WY 83001
rcornish@rcornishlaw.com | Office: (307) 264-0535 | Fax: (571) 290-6052

Washington DC Office:  1701 Pennsylvania Avenue, NW, Suite 200, Washington, DC 20006

**From:** WYDdb_Johnson <wyojudgeabj@wyd.uscourts.gov>
**Sent:** Thursday, December 7, 2023 10:24 AM
**To:** kent kristensen <ceokentkristensen@gmail.com>; WYDdb_Johnson <wyojudgeabj@wyd.uscourts.gov>; rcornish@rcornishlaw.com
**Subject:** RE: Case No. 1:23-cv-00194 Judge Alan Johnson

Mr. Kristensen,

The court does not accept emailed pleadings. Anything you would like to be made a part of the record should be mailed to the Clerk's Office at 2120 Capitol Avenue, Cheyenne WY 82001 so it can be filed in the case.

Thank you,
Sarah Williamson
Judicial Assistant to the
Honorable Alan B. Johnson

**From:** kent kristensen <ceokentkristensen@gmail.com>
**Sent:** Monday, November 27, 2023 8:31 AM
**To:** WYDdb_Johnson <wyojudgeabj@wyd.uscourts.gov>; rcornish@rcornishlaw.com
**Subject:** Case No. 1:23-cv-00194 Judge Alan Johnson

**CAUTION - EXTERNAL:**

Dear Judge Alan Johnson

Please find our comments to this case one world messenger LLC is insolvent and can't pay for an attorney and has nothing to do with this lawsuit no ownership no connection there is many mistakes in this lawsuit

To The Court in Wyoming...

The case with Ralph Peter John Henry Rochard and Con Smith, Messenger Fintech GMBH and One World Messenger, Is very simple,
Con Smith Group invested in Messenger Fintech GMBH in the territory of Switzerland and that has nothing to do with the United States of America.
The United States of America does not have jurisdiction in Switzerland.
The Con Smith Group signed the document with Messenger Fintech GMBH, they transferred the funds to Switzerland and everything is dealt with in Switzerland.
The case was closed by the prosecutor in Switzerland.
The bank account was closed in Switzerland and the company was closed in Switzerland. The company was never the owner of One World Messenger LLC Wyoming. The company was owned by a group of people and was closed down due to the fact that Mr. Colombo, the CEO of the company, stole the money and ran away to Romania. The prosecutor and the lawyers settled everything.
When Colombo returns to Switzerland he will probably be arrested. That is the end of the connection between Messenger Fintech GMBH and One World Messenger LLC.
Whether the One World Messenger LLC exists in Wyoming or not, I have no clue about and I am not involved.
Point number 2 which is about mining the K315 in Nevada was owned by Mr. John Dobrowski, and operated by John Dobrowski, who was our mining partner.
He was paid in cash in bank transfer and in cryptocurrency. He was supposed to be mining on 10th January 2021.
On December 25th, 2020 he unfortunately died from the coronavirus. He died of respiratory in a hospital in North Carolina. All this can be verified easily. So we lost a mining partner and the mining was delayed and his family son and wife. They did not do anything about the project, because they were at the hospital with John, and after that, I suppose One World Messenger decided not to start mining because they couldn't find another mining partner or whatever happened up there.
That is hard to say.
 I know that James Bane, the attorney, was not involved in Switzerland and the Swiss company did not really have any use of his work as a trustee. I am not an attorney. I cannot justify that, but I can say as a person that the Swiss company lost everything, absolutely everything.

As a person, I can say that I have had no benefit from any of the funds invested by the Con Smith Group.
None whatsoever and I don't see any reason for this case, who appear in the United States. There is no jurisdiction between the United States and Switzerland. I think it's away from the Con Smith Group.

Maybe the whole case is connected to Barry Sanders or others who just disturb and try to make a hateful trial. I don't think it has anything to do with the reality, because the Con Smith Group has signed the document where they are on a list of investors to be paid back in full. Remember that I am working non-stop to secure anyone who has losses that they will be repaid.
That is a really important issue, again an important issue not to be sued in the United States in the wrong jurisdiction, they signed the document and I spoke a years ago several times, and email several times with Con Smith Group and everything has always been very clear.

---------- Forwarded message ---------
From: **kent kristensen** <ceokentkristensen@gmail.com>
Date: Mon, Nov 27, 2023, 16:08
Subject: Fwd: Case No. 1:23-cv-00194
To: Mogens Garbenfeldt <mogensgarbenfeldt@gmail.com>



---------- Forwarded message ---------
From: **kent kristensen** <ceokentkristensen@gmail.com>
Date: Mon, Nov 27, 2023, 16:06

Subject: Fwd: Case No. 1:23-cv-00194
To: <WyoJudgeABJ@wyd.uscourts.gov>, <rcornish@rcornishlaw.com>

Dear judge Alan Johnson

Court Locations
Cheyenne
2120 Capitol Avenue
Room 2131
Cheyenne, WY 82001

*****************

This is written on behalf of one world messenger LLC in regards to the case number above 1:23-cv-00194

One world messenger LLC is insolvent and need an attorney appointed free of charge

This case was settled in Swiss and therefore we can't understand why one world messenger LLC

Has any thing to do with messenger Fintech gmbh who dealt with the people involved in this lawsuit

***************

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
RALPH PETER JOHN HENRY
ROCHARD, an individual; and CON SMITH, an individual,
Plaintiffs,
ONE WORLD MESSENGER, a
Wyoming Corporation a/k/a ONE
WORLD MESSENGER LLC; TEK
RESOURCES LLC, a Wyoming Limited
Liability Company; JAMES EDWARD
BAME, an individual; and IPLA P.A., a California Professional Association, Defendants.
Case No. 1:23-cv-00194
AMENDED COMPLAINT
(1) Breach of Contract
(2) Breach of the Implied Covenant of
Good Faith and Fair Dealing
(3) Legal Malpractice
(4) Unjust Enrichment
(5) Negligence
(6) Negligent supervision
AMENDED COMPLAINT
By and through undersigned counsel, Plaintiffs Ralph Peter John Henry Rochard ("Rochard") and Con Smith ("Smith") (collectively "Plaintiffs"), file this Amended Complaint seeking damages and sue Defendants One World Messenger a/k/a One World Messenger LLC I
TEK Resources LLC, James Edward Bame, and IPLA P.A. (collectively "Defendants") for (i) breach of contract; (ii) breach of the implied covenant of good faith and fair dealing; (iii) legal malpractice; (iv) unjust enrichment; (v) negligence; and (vi) negligent supervision, and allege as
follows:

3

INTRODUCTION

1 One World Messenger is a Wyoming Corporation. Documents at issue this case refer to it simultaneously with its registration number with the Wyoming Secretary of State but with the name "One World Messenger LLC." There is no LLC bearing this name. For purposes of clarity compelled by service issues, this Amended Complaint solely addresses this issue so that the registered agent of One World Messenger accepts service.

1. This is a breach of contract action against two Wyoming companies and an attorney acting as independent trustee who failed to properly manage and return Plaintiffs' capital pursuant to the parties' agreement. Plaintiffs invested based on Defendants' representations made in the application form regarding an Independent Trustee and assurances that the defendant bank was regulated by the Swiss Financial Market Supervisory Authority (FINMA).

2. Due to Defendants' misrepresentations, Plaintiffs believed their money would be used to fund the operation of a viable mining property in the United States with experienced mining operators conducting the operations. Plaintiffs anticipated that the production and sale of metals retrieved would find the return of their capital with interest as specified in the parties' agreement. Pursuant to the agreement, the Plaintiffs were to receive the full return of their investment, with specified interest.

3. After the one-year term period of the agreement elapsed, the Plaintiffs discovered that Defendants mismanaged and failed to secure their funds. The Independent Trustee attorney allowed ill-suited and inexperienced individuals to seize Plaintiffs' assets without recourse, to their severe financial detriment.

PARTIES

4. Rochard is an individual who resides in Courçon, France. At all times relevant to this proceeding, he resided in Abu Dhabi, United Arab Emirates.

5. Smith is an individual who resides in Cork, Ireland.

6. Defendant One World Messenger ("One World") is a Wyoming corporation with a principal place of business at 1309 Coffeen Avenue, Suite 1200, Sheridan, Wyoming 82801. One World maintains its registered agent in Wyoming with Cloud Peak Law Group, P.C., 1095 Sugar View Drive, Suite 100, Sheridan, Wyoming 82801. One World has also identified itself from time to time as "One World Messenger LLC" although it is not a limited liability corporation in Wyoming or anywhere else.

7. Defendant TEK Resources LLC ("TEK") is a Wyoming corporation that, at all relevant times, maintained a registered address at 745 Lane 36, Burlington, Wyoming 82411. Its registration number with the Wyoming Secretary of State is 2013-000655933.

8. Defendant James Edward Bame ("Bame") is an individual who, upon information and belief, resides in Colorado. At all times relevant to this proceeding, Bame was the owner and sole member of TEK and is also an attorney licensed to practice in the State of California. His California Attorney ID number is 204617.

9. Defendant IPLA P.A. ("IPLA") is a California corporation with an office located at 3580 Wilshire Boulevard, 17th Floor, Los Angeles, California 90010. At all relevant times, IPLA employed Defendant Bame as an attorney. A copy of his attorney registration with IPLA is attached as "Exhibit 1."

10. At all times relevant to this proceeding, Barne functioned as an agent and owner of TEK in that he exercised sole control and domination over TEK's affairs. Documents filed with the Wyoming Secretary of State indicate Bame is the sole owner of TEK. Bame signed all the relevant documents on TEK's behalf in this regard.

RELEVANT NON-PARTIES

11.To The Court in Wyoming...

    The case with Ralph Peter John Henry Rochard and Con Smith, Messenger Fintech GMBH and One World Messenger, Is very simple,

Con Smith Group, invested in messenger Fintech in the territory of Switzerland has nothing to do with the United States of America.

The United States of America does not have jurisdiction in Switzerland.

The Con Smith Group, signed the document with Messenger Fintech, they transferred the funds to Switzerland and everything is dealt with in Switzerland.

The case was closed by the prosecutor in Switzerland.

The bank account was closed in Switzerland and the company was closed in Switzerland. The company was never the owner of One World Messenger LLC Wyoming. The company was owned by a group of people and was closed down due

to the fact that Mr Colombo the CEO of the company, stole the money and run away to Romania. The prosecutor and the lawyers settled everything.
When Colombo returns to Switzerland he will probably be arrested That is the end of the connection between Messenger Fintech GMBH and the One World Messenger LLC.
Whether the One World Messenger LLC exist in Wyoming or not, I have no clue about and I am not involved.
Point number 2 which is about mining the K315 in Nevada was owned by Mr. John Dobrowski, and operated by John Dobrowski, who was our mining partner.
He was paid in cash in bank transfer and in cryptocurrency. He was supposed to be mining at 10th January 2021.
In December 25th, 2020 he unfortunately died from the coronavirus. He died on respiratory in a hospital in North Carolina. All this can be verified easily. So we lost a mining partner and the mining was delayed and his family son and wife. They did not do anything about the project, because they were at the hospital with John, and after that I suppose One World Messenger decided not to start mining because they couldn't find another mining partner or whatever happened up there.
That is hard to say.
 I know that James Bane, the attorney, he was not involved in Switzerland and the Swiss company did not really have any use of his work as a trustee. I am not an attorney. I cannot justify that, but I can say as a person that the Swiss company lost everything, absolutely everything.

As a person, I can say that I have had no benefit from any of the funds invested by the Con Smith Group.
None whatsoever and I don't see any reason for this case, who appear in the United States. There is no jurisdiction between the United States and Switzerland. I think it's away from Con Smith Group.

Maybe the whole case is connected to Barry Sanders or others who just disturb and try to make a hateful trial. I don't think it has anything to do with the reality, because Con Smith Group has signed the document where they are on a list of investors to be paid back in full. Remember that I am working non-stop to secure anyone who have losses that they will be repaid.
That is a really important issue, again an important issue not to be sued in the United States in the wrong jurisdiction, they signed the document and I spoke a years ago several times, and email several times with Con Smith Group and everything have always very clear.
MessengerFintech GMBH ("MessengerFintech") is a Swiss corporation located at Grafenauweg 10, Zug 6300, Switzerland. MessengerFintech is the parent company of One World. MessengerFintech bears Company Registration Number: 170.4.002.326-5 and UD number: CHE101-029-610. Upon information and belief, MessengerFintech was liquidated on December 19, 2019.
12. Kent Kristensen ("Kristensen") is a Danish individual who, upon information and belief, currently resides in Malaga, Spain. At all relevant times, Kristenson was the sole owner of MessengerFintech and One World. He was also the Chief Executive Officer of Messenger Bank of MessengerFintech ("Messenger Bank").
JURISDICTION AND VENUE
13. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (a)(l), as there is complete diversity of citizenship between Plaintiffs and each Defendant, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.
14. The Court has personal jurisdiction over Defendants because they reside and/or transact business in this District.
15. This District is the proper venue for the dispute because the District has personal jurisdiction over defendants pursuant to 28 U.S.C.§ 1391(b)(3).
GENERAL ALLEGATIONS
The Agreement
16. In October 2019, Rochard's wealth manager in Dubai introduced him to an investment opportunity to fund the mining of gold deposits in the United States and to later sell the mined metal.
17. On October 15, 2019, Rochard completed the Individual Reservation Form  Messenger Fintech Fixed Rate Account application form from Messenger Bank of MessengerFintech, and opted for a 12% return after a twelve-month investment term. The Application stated that "Investors will have a 7-day cooling off period from date of application to withdraw their application and funds to be returned without Interest." A copy of the application form is attached as "Exhibit 2."

5

18. Kristensen, CEO of Messenger Bank, called Rochard to assure him of the investment's authenticity and convinced Plaintiff to increase his investment.
19. Both Rochard's broker and Gary O'Driscoll, Head of Private Clients at Clear Treasury, gave him instructions for which bank to transfer the funds to purportedly obtain the best exchange rate for the investment with MessengerFintech.
20. Rochard grew hesitant about the investment, the company and its operations. He attempted to contact O'Driscoll directly to stop the transfer but was informed the process had
already been completed on October 21, 2019.
21. On November 14, 2019, Gary James Wood, then Senior Manager at
MessengerFintech informed Rochard that the return of his investment was impossible because his
2 funds were already "frozen" in a smart contract.
22. On November 16, 2019, Rochard received a copy of One World's MBM
Investment Agreement ("Agreement") dated October 22, 2019. Mr. Wood signed the Agreement,
a copy of which is attached as "Exhibit 3."
23. The Agreement states that a smart contract transaction was created and guaranteed
by One World's MBMX digital coin. The Agreement described MBM as a "precious metal coin backed by 65% Gold and 35% Platinum." According to the Agreement, the asset-backed MBM cryptocurrency was secured on the company's Blockchain technology through the smart contract,
but the link to the smart contract was at all relevant times defunct. Id

2 "A smart contract is computer code that is stored directly on the Ethereum Blockchain, and which automatically executes all or parts of an agreement, pursuant to its specifications." Van Loon v. Dep 't of Treasury, No. 1:23-CV-312-RP, 2023 U.S. Dist. LEXIS 144035, *8 (W.D. Tex. Aug. 17, 2023)
24. Plaintiff Rochard's Agreement called for his investment of $ 149, 132.00 to remain frozen for twelve months and, upon maturity, the contracted value would be released along with
12% interest for a total of $167,027.00. Id
25. Plaintiff Smith executed his Agreement on October 23, 2019, a copy of which is attached as "Exhibit 4." Plaintiff Smith's Agreement called for his investment of $200,000.00 to remain frozen for twelve months and, upon maturity, the contracted value would be released along with 20% interest for a total of $240,000.00. The Agreement also provided that Smith would receive 10% interest if repayment were not made within thirty days of the due date, and an additional 5% in interest every thirty days that the payment remained outstanding. Id
26. For Plaintiffs, the crucial selling point of the Agreement was that it declared that the metals were "secured under Trustee Management giving [Plaintiffs] investment extra security."
27. Kristensen sent a welcome letter to Rochard on October 23, 2019, which stated that "Investors can now invest with the understanding their capital is 100% asset-backed and controlled by credible trustees." Smith received a similar letter.
28. The Agreement listed Defendant TEK—and its owner Defendant Bame—as the independent trustee.
29. Plaintiffs received a document ("Document") from TEK—signed by Bame—that stated One World/MessengerFintech has: assigned their current interest and management responsibility to [TEK] for control and operation of the K-315 mine and the K-150 mine  . The mines combined have a total value of $5.2bn consisting ofprecious metals. These assets are secured under Trustee-Custodian Management for the protection of our investors into the IOM utility coin.
The Metals produced from the mining properties will be immediately segregated into a secure vault storage under selected Trustee-Custodian Management on behalf of One World Messenger/investors, with all-risk insurance policy to fully protect the physical assets.
These managed assets will be designated for repayment of the Fixed Rate Interest Deposits and portions of the mined metals will be liquidated into the commodity market to generate revenue. Full accounting and auditing will be issued on a regular basis based on the sales of the Physical metals and the assets secured under Trustee depository.
A copy of the document is attached as "Exhibit 5."
30. In this document, TEK/Bame utilized a Wyoming registered address and the office address of Bame's law firm, Defendant PLA.
31. On October 3 1, 2019, Bame confirmed to Plaintiff Smith that his investment was secured.
Default
32. Plaintiffs' investments matured on October 22, 2020.

33. On October 27, 2020, Plaintiffs received identical letters from MessengerFintech advising that due to delays from the COVID-19 pandemic, their funds remained locked away for "investigation" and anticipated an 8 to 16-week delay to collect them. The letter assured them that, again, their capital was 100% asset-backed and controlled by credible trustees.

34. On November I l, 2020, Bame confirmed in an e-mail to Plaintiff Smith that the security for his investment was still being held. After Smith asked what next steps he should take to recover the money from the security he held, Bame confirmed that "[t]he assets are in-ground and would require that mining extraction and refining of the metal assets occur. I believe that Messenger, will be able to meet their commitments in a more timely manner than progressing with the extraction and mining of the metals."

35. When Smith pressed Bame for additional information on ownership rights for the mines, Banne continued to dodge Smith's requests and only provided excuses for MessengerFintench's nonpayment and supposed efforts being made to repay Plaintiffs.

36. On November 25, 2020, Rochard received an e-mail advising him that mining would commence on January 2, 2021.

37. On December 30, 2020, Bame notified Smith that he had been removed as an Independent Trustee on a date uncertain. Neither Smith nor Rochard received any prior notice of this removal or anything regarding how investors such as Plaintiffs would replace Bame.

38. After months of stalling on Smith's attempts to receive documentation on ownership rights to the mines, Barne in early 2021 attempted to loop in Kristensen to the discussions, in conflict with his role as Independent Trustee.

39. On April 7, 2021, Bame stated to Plaintiff Smith "If I had received funds from Messenger to begin mining operations, then I might have had more of an active role." Bame confirmed that, despite his role as an Independent Trustee, he never received any funds from MessengerFintech and failed to secure any portion of Plaintiffs' investments.

40. Plaintiffs have yet to be paid back any portion of their initial investment.

41. Defendant Bame not only influenced, managed, and governed TEK, but given his significant control over TEK, TEK became merely an alter ego of Bame and an instrumentality through which Bame's wrongs were perpetuated against Plaintiffs.

COUNT 1

Breach of Contract (Defendants One World, TEK, and Bame)

Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

43. Plaintiffs and Defendants are parties to and/or an Independent Trustee of a lawfully enforceable contract, the Agreement, as evidenced by the various documents and correspondence

exchanged between the parties and attached to this Amended Complaint. The Agreement required One World/Messenger Fintech to return the Plaintiffs' investments back to them after one year with interest. The Agreement further required TEK and Barne to act as Independent Trustee and secure and control the funds.

44. Barne actively participated in the negotiation and execution of the Agreement.

45. Plaintiffs fully performed their obligations under the Agreement by furnishing the stated investment funds.

46. Defendant One World breached the Agreement by failing to return Plaintiffs' investments with the specified interest. Defendants TEK and Bame have breached the Agreement by failing to secure the Plaintiffs' investment funds through possession or control to ensure repayment to the Plaintiffs.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendants, awarding compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

COUNT 11

Breach of the Implied Covenant of Good Faith and Fair Dealing (Defendants One World, TEK, and Bame)

47. Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

48. Every contract governed by the law of the State of Wyoming contains an implied covenant of good faith and fair dealing.

49. Plaintiffs behaved in good faith and fully performed their obligations under the Agreement.

7

50. Defendants, and each of them, breached the covenant of good faith and fair dealing. Despite continuous representations that the investments were secured and the mining operations would soon be underway, Defendants One World and MessengerFintech improperly utilized and mismanaged Plaintiffs' investments by failing (i) to use them for mining operations and (ii) return the capital with interest as specified in the agreements. Defendants TEK and Bame further breached the covenant of good faith and fair dealing by failing to secure any portion of Plaintiffs' assets and did not play any role in ensuring those funds were used to commence mining operations despite representing to Plaintiffs that they had secured their investments.

51. Plaintiffs are retired and have been severely damaged in that they have lost substantial funds that they were counting on to support them financially in their retirement.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendants, awarding compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

COUNT 111
Legal Malpractice (Defendants Bame and IPLA)

52. Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

53. Defendant Bame was a party to an Agreement with Plaintiffs to act as Independent Trustee and secure their investments. Under the belief that Defendant would secure their investments, Plaintiffs entered into the Agreement.

54. Defendant Bame is a lawyer duly licensed to practice in the State of California and is subject to the California Rules of Professional Conduct.

55. Under Rule 7.1(a) of the California Rules of Professional Conduct, "A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services, A communication is false or misleading if it contains a material misrepresentation of fact or law, or omits a fact necessary to make the communication considered as a whole not materially misleading."

56. Rule 8.4 of the California Rules of Professional Conduct further states that it constitutes "professional misconduct for a lawyer to: (a) violate these rules or the State Bar Act" and "(c) engage in conduct involving dishonesty, fraud, deceit, or reckless or intentional misrepresentation."

57. Defendant Bame has committed professional misconduct by refusing to abide by these Rules of Professional Conduct, including, but not limited to, making false or misleading statements to Plaintiffs as to the status and security of Plaintiffs' assets in that he did not play any role in ensuring those funds were used to commence mining operations despite representing to Plaintiffs that he had secured their investments, and failing to undertake measures to secure Plaintiffs' investments.

58. At all relevant times, defendant Bame was acting within the scope of his employment with Defendant IPLA.

59. Defendants failed to exercise the care, skill, and diligence commonly possessed and exercised by members of the legal profession.

60. As a direct and proximate result of the Defendants' negligent conduct, actions, and failure to act, Plaintiffs suffered damages.

WHEREFORE, Plaintiffs pray for entry of judgment in their favour and against Defendants, awarding compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

COUNT IV
Unjust Enrichment (Defendants One World, TEK, and Bame)

61. Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

62. To the extent permitted by law, this cause of action is pleaded in the alternative.

63. This is an alternative count for unjust enrichment if for any reason any enforceable express contract is not found to have been established between Plaintiffs and Defendants.

64. Regardless of the legal sufficiency of any alternative express contract claims in this Amended Complaint, Plaintiffs conferred a benefit upon Defendants, who have knowledge of that benefit, in that they continue to benefit from Plaintiffs' investment capital.

65. Upon information and belief, Defendants Bame and TEK Resources were compensated for their role as independent trustees.

66. Defendants accepted and retained the conferred benefit.

67. The decision to refuse to compensate Plaintiffs pursuant to the Agreement has unjustly enriched Defendants to the financial detriment of Plaintiffs.

68. Under the circumstances, equity and good conscience required Defendants to refund all money received at Plaintiffs' expense on the basis of money they accepted for use in mining operations.

WHEREFORE, Plaintiffs pray for entry of judgment in their favour and against Defendants, awarding compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

COUNT V

Negligence (Defendants One World, TEK, Bame, and IPLA)

69. Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

70. To the extent permitted by law, this cause of action is pleaded in the alternative.

71. This is an alternative count for negligence if for any reason any enforceable express contract is not formed to have been established between Plaintiffs and Defendants.

72. Defendants owed Plaintiffs a duty to speak truthfully and make a full and fair disclosure at the time of speaking.

73. Defendants breached their duty of care and acted carelessly, negligently, and/or recklessly by representing to Plaintiffs that their investments were 100% asset-backed and secured and controlled by an independent frustee, with an all-risk insurance policy to fully protect the physical mining assets, while neglecting to mention that Plaintiffs' investments were neither controlled, nor secured by the Independent Trustee.

74. At all relevant times, defendant Bame was acting within the scope of his employment with Defendant PLA.

75. Defendants knew or should have known in the exercise of reasonable care that their actions or omissions would harm Plaintiffs.

76. Defendants' failure to exercise reasonable care and breach of their respective duties owed to Plaintiffs are direct and proximate causes of damages sustained by Plaintiffs. Had Defendants exercised any modicum of reasonable care as the law requires, Defendants would have informed Plaintiffs that the investments were not secured, and Plaintiffs would not have invested in the project, preventing their severe financial detriment.

WHEREFORE, Plaintiffs pray for entry ofjudgment in their favor and against Defendants, awarding compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

COUNT VI

Negligent Supervision (Defendant IPLA)

77. Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

78. To the extent required by law, this cause of action is pleaded in the alternative.

79. At all relevant times, Defendant had the duty to supervise the conduct of its employees and/or attorneys, including attorney Bame, both generally and in connection with the performance of their legal duties. Defendant also owed Plaintiffs a duty of care to make reasonable efforts to ensure that (i) its law firm had in effect measures giving reasonable assurance that all lawyers in the firm comply with the California Rules of Professional Conduct; and (ii) its attorneys comply with the California Rules of Professional Conduct.

80. Defendant breached its duty by failing to adequately supervise Bame and/or Incorporate measures to detect attorney noncompliance with the California Rules of Professional Conduct.

81. Defendant's failure to exercise reasonable care and breach of its respective duty owed to Plaintiffs are direct and proximate causes of damages sustained by Plaintiffs. Had Defendant exercised any modicum of reasonable care as the law requires, Bame's misrepresentations would not have occurred, preventing Plaintiffs' severe financial detriment.

WHEREFORE, Plaintiffs pray for entry of judgment in their favour and against Defendants, awarding compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants and award Plaintiffs compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

DEMAND FOR JURY TRIAL

PLAINTIFFS, RALPH PETER HENRY ROCHARD and CON SMITH, demand a
jury trial of all issues triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: November 10, 2023
Respectfully Submitted,
LAW OFFICES OF ROBERT V. CORNISH, JR., PC
/s/ Robert V Cornish, Jr.
ROBERT V. CORNISH, JR.
680 South Cache Street, Suite 100
P.O. Box 12200
Jackson, WY 83001
Office: (307) 264-0535
Email: rcornish@rcornishlaw.com
Attorneyfor Plaintiffs


UNITED STATES DISTRICT COURT FOR THE DISTRICT OF WYOMING
RALPH PETER JOHN HENRY
ROCHARD, an individual; and CON SMITH, an individual,
Plaintiffs,
ONE WORLD MESSENGER, a
Wyoming Corporation a/k/a ONE
WORLD MESSENGER LLC; TEK
RESOURCES LLC, a Wyoming Limited
Liability Company; JAMES EDWARD BAME, an individual; and IPLA P.A., a California Professional Association,
Defendants.
Case No. 1:23-cv-00194
CERTIFICATE OF SERVICE
I certify that on November 10, 2023, I served the Amended Complaint on the following
parties via first-class mail:
TEK RESOURCES LLC
103 Highland Dr
Canonsburg, PA 15317
James Edward Bame 103 Highland Dr
Canonsburg, PA 15317
IPLA P.A.
3580 WILSHIRE BLVD, Suite 17001),
Los Angeles, CA 90010
Lucas Buckley
Hathaway & Kunz, LLP
2515 Warren Avenue, Suite 500
RO. Box 1208
Cheyenne, WY 82001
Dated: November 10, 2023
Respectfully Submitted,
LAW OFFICES OF ROBERT V. CORNISH, JR., PC
Is/ Robert V Cornish Jr.

ROBERT V. CORNISH, JR.
680 South Cache street, Suite 100
P.O. Box 12200
Jackson, WY 83001
Office: (307) 264-0535
Email: rcornish a rcornishlaw.com

10

Attorneyfor Plaintiffs

---------- Forwarded message ---------
From: **Mogens Garbenfeldt** <mg@danhill.dk>
Date: Mon, Nov 27, 2023, 14:22
Subject: Case No. 1:23-cv-00194
To: kent kristensen <ceokentkristensen@gmail.com>

# Response letter to The Court in Wyoming
# Case No. 1:23-cv-00194

RALPH PETER JOHN HENRY ROCHARD, an individual;
and CON SMITH, an individual,
Plaintiffs,
ONE WORLD MESSENGER, a
Wyoming Corporation a/k/a ONE
WORLD MESSENGER LLC; TEK
RESOURCES LLC, a Wyoming Limited
Liability Company; JAMES EDWARD
BAME, an individual; and IPLA P.A., a California Professional Association, Defendants.
AMENDED COMPLAINT

  (1)     Breach of Contract
(2)     Breach of the Implied Covenant of
        Good Faith and Fair Dealing
(3)     Legal Malpractice
(4)     Unjust Enrichment
(5)     Negligence
(6)     Negligent supervision

AMENDED COMPLAINT

By and through undersigned counsel, Plaintiffs Ralph Peter John Henry Rochard ("Rochard") and Con Smith ("Smith") (collectively "Plaintiffs"), file this Amended Complaint seeking damages and sue Defendants One World Messenger a/k/a One World Messenger LLC I
TEK Resources LLC, James Edward Bame, and IPLA P.A. (collectively "Defendants") for (i) breach of contract; (ii) breach of the implied covenant of good faith and fair dealing; (iii) legal malpractice; (iv) unjust enrichment; (v) negligence; and (vi) negligent supervision, and allege as
follows:

INTRODUCTION

1       One World Messenger is a Wyoming Corporation. Documents at issue in this case refer to it simultaneously with its registration number with the Wyoming Secretary of State but with the name "One World Messenger LLC." There is no LLC bearing this name. For purposes of clarity compelled by service issues, this Amended Complaint solely addresses this issue so that the registered agent of One World Messenger accepts service.

1.      This is a breach of contract action against two Wyoming companies and an attorney acting as independent trustee who failed to properly manage and return Plaintiffs' capital pursuant to the parties' agreement. Plaintiffs invested based on Defendants' representations made in the application form regarding an Independent Trustee and assurances that the defendant bank was regulated by the Swiss Financial Market Supervisory Authority (FINMA).

11

2. Due to Defendants' misrepresentations, Plaintiffs believed their money would be used to fund the operation of a viable mining property in the United States with experienced mining operators conducting the operations. Plaintiffs anticipated that the production and sale of metals retrieved would find the return of their capital with interest as specified in the parties' agreement. Pursuant to the agreement, the Plaintiffs were to receive the full return of their investment, with specified interest.

3. After the one-year term period of the agreement elapsed, the Plaintiffs discovered that Defendants mismanaged and failed to secure their funds. The Independent Trustee attorney allowed ill-suited and inexperienced individuals to seize Plaintiffs' assets without recourse, to their severe financial detriment.

## PARTIES

4. Rochard is an individual who resides in Courçon, France. At all times relevant to this proceeding, he resided in Abu Dhabi, United Arab Emirates.

5. Smith is an individual who resides in Cork, Ireland.

6. Defendant One World Messenger ("One World") is a Wyoming corporation with a principal place of business at 1309 Coffeen Avenue, Suite 1200, Sheridan, Wyoming 82801. One World maintains its registered agent in Wyoming with Cloud Peak Law Group, P.C., 1095 Sugar View Drive, Suite 100, Sheridan, Wyoming 82801. One World has also identified itself from time to time as "One World Messenger LLC" although it is not a limited liability corporation in Wyoming or anywhere else.

7. Defendant TEK Resources LLC ("TEK") is a Wyoming corporation that, at all relevant times, maintained a registered address at 745 Lane 36, Burlington, Wyoming 82411. Its registration number with the Wyoming Secretary of State is 2013-000655933.

8. Defendant James Edward Bame ("Bame") is an individual who, upon information and belief, resides in Colorado. At all times relevant to this proceeding, Bame was the owner and sole member of TEK and is also an attorney licensed to practice in the State of California. His California Attorney ID number is 204617.

9. Defendant IPLA P.A. ("IPLA") is a California corporation with an office located at 3580 Wilshire Boulevard, 17th Floor, Los Angeles, California 90010. At all relevant times, IPLA employed Defendant Bame as an attorney. A copy of his attorney registration with IPLA is attached as "Exhibit 1."

10. At all times relevant to this proceeding, Barne functioned as an agent and owner of TEK in that he exercised sole control and domination over TEK's affairs. Documents filed with the Wyoming Secretary of State indicate Bame is the sole owner of TEK. Bame signed all the relevant documents on TEK's behalf in this regard.

## RELEVANT NON-PARTIES

11.To The Court in Wyoming…

The case with Ralph Peter John Henry Rochard and Con Smith, Messenger Fintech GMBH and One World Messenger, Is very simple,

Con Smith Group, invested in messenger Fintech in the territory of Switzerland has nothing to do with the United States of America.

The United States of America does not have jurisdiction in Switzerland.

The Con Smith Group, signed the document with Messenger Fintech, they transferred the funds to Switzerland and everything is dealt with in Switzerland.

The case was closed by the prosecutor in Switzerland.

The bank account was closed in Switzerland and the company was closed in Switzerland. The company was never the owner of One World Messenger LLC Wyoming. The company was owned by a group of people and was closed down due to the fact that Mr Colombo the CEO of the company, stole the money and run away to Romania. The prosecutor and the lawyers settled everything.

When Colombo returns to Switzerland he will probably be arrested That is the end of the connection between Messenger Fintech GMBH and the One World Messenger LLC.

Whether the One World Messenger LLC exists in Wyoming or not, I have no clue about and I am not involved.

12

Point number 2 which is about mining the K315 in Nevada was owned by Mr. John Dobrowski, and operated by John Dobrowski, who was our mining partner.

He was paid in cash in bank transfer and in cryptocurrency. He was supposed to be mining at 10th January 2021.

In December 25th, 2020 he unfortunately died from the coronavirus. He died on respiratory in a hospital in North Carolina. All this can be verified easily. So we lost a mining partner and the mining was delayed and his family son and wife. They did not do anything about the project, because they were at the hospital with John, and after that I suppose One World Messenger decided not to start mining because they couldn't find another mining partner or whatever happened up there. That is hard to say.

I know that James Bane, the attorney, he was not involved in Switzerland and the Swiss company did not really have any use of his work as a trustee. I am not an attorney. I cannot justify that, but I can say as a person that the Swiss company lost everything, absolutely everything.

As a person, I can say that I have had no benefit from any of the funds invested by the Con Smith Group.

None whatsoever and I don't see any reason for this case, who appear in the United States. There is no jurisdiction between the United States and Switzerland. I think it's away from Con Smith Group.

Maybe the whole case is connected to Barry Sanders or others who just disturb and try to make a hateful trial. I don't think it has anything to do with the reality, because Con Smith Group has signed the document where they are on a list of investors to be paid back in full.

Remember that I am working non-stop to secure anyone who has losses that they will be repaid.

That is a really important issue, again an important issue not to be sued in the United States in the wrong jurisdiction, they signed the document and I spoke a years ago several times, and email several times with Con Smith Group and everything has always been very clear.

MessengerFintech GMBH ("MessengerFintech") is a Swiss corporation located at Grafenauweg 10, Zug 6300, Switzerland. MessengerFintech is the parent company of One World. MessengerFintech bears Company Registration Number: 170.4.002.326-5 and UD number: CHE101-029-610. Upon information and belief, MessengerFintech was liquidated on December 19, 2019.

12.     Kent Kristensen ("Kristensen") is a Danish individual who, upon information and belief, currently resides in Malaga, Spain. At all relevant times, Kristensen was the sole owner of MessengerFintech and One World. He was also the Chief Executive Officer of Messenger Bank of MessengerFintech ("Messenger Bank").

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (a)(l), as there is complete diversity of citizenship between Plaintiffs and each Defendant, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

14.     The Court has personal jurisdiction over Defendants because they reside and/or transact business in this District.

15.     This District is the proper venue for the dispute because the District has personal jurisdiction over defendants pursuant to 28 U.S.C.§ 1391(b)(3).

## GENERAL ALLEGATIONS

### The Agreement

16.     In October 2019, Rochard's wealth manager in Dubai introduced him to an investment opportunity to fund the mining of gold deposits in the United States and to sell the mined metal later.

17.     On October 15, 2019, Rochard completed the Individual Reservation Form Messenger Fintech Fixed Rate Account application form from Messenger Bank of MessengerFintech, and opted for a 12% return after a twelve-month investment term. The Application stated that "Investors will have a 7-day cooling off period from the date of application to withdraw their application and funds to be returned without Interest." A copy of the application form is attached as "Exhibit 2."

18.     Kristensen, CEO of Messenger Bank, called Rochard to assure him of the investment's authenticity and convinced Plaintiff to increase his investment.

19.     Both Rochard's broker and Gary O'Driscoll, Head of Private Clients at Clear Treasury, gave him instructions for which bank to transfer the funds to purportedly obtain the best exchange rate for the investment with MessengerFintech.

20.     Rochard grew hesitant about the investment, the company, and its operations. He attempted to contact O'Driscoll directly to stop the transfer but was informed the process had already been completed on October 21, 2019.

21.     On November 14, 2019, Gary James Wood, then Senior Manager at MessengerFintech informed Rochard that the return of his investment was impossible because his 2 funds were already "frozen" in a smart contract.

22.     On November 16, 2019, Rochard received a copy of One World's MBM Investment Agreement ("Agreement") dated October 22, 2019. Mr. Wood signed the Agreement, a copy of which is attached as "Exhibit 3."

23.     The Agreement states that a smart contract transaction was created and guaranteed by One World's MBMX digital coin. The Agreement described MBM as a "precious metal coin backed by 65% Gold and 35% Platinum." According to the Agreement, the asset-backed MBM cryptocurrency was secured on the company's Blockchain technology through the smart contract, but the link to the smart contract was at all relevant times defunct. Id

2 "A smart contract is computer code that is stored directly on the Ethereum Blockchain, and which automatically executes all or parts of an agreement, pursuant to its specifications." Van Loon v. Dep 't of Treasury, No. 1:23-CV-312-RP, 2023 U.S. Dist. LEXIS 144035, *8 (W.D. Tex. Aug. 17, 2023)

24.     Plaintiff Rochard's Agreement called for his investment of $ 149, 132.00 to remain frozen for twelve months and, upon maturity, the contracted value would be released along with 12% interest for a total of $167,027.00. Id

25.     Plaintiff Smith executed his Agreement on October 23, 2019, a copy of which is attached as "Exhibit 4." Plaintiff Smith's Agreement called for his investment of $200,000.00 to remain frozen for twelve months and, upon maturity, the contracted value would be released along with 20% interest for a total of $240,000.00. The Agreement also provided that Smith would receive 10% interest if repayment were not made within thirty days of the due date, and an additional 5% in interest every thirty days that the payment remained outstanding. Id

26.     For Plaintiffs, the crucial selling point of the Agreement was that it declared that the metals were "secured under Trustee Management giving [Plaintiffs] investment extra security."

27.     Kristensen sent a welcome letter to Rochard on October 23, 2019, which stated that "Investors can now invest with the understanding their capital is 100% asset-backed and controlled by credible trustees." Smith received a similar letter.

28.     The Agreement listed Defendant TEK—and its owner Defendant Bame—as the independent trustee.

29.     Plaintiffs received a document ("Document") from TEK—signed by Bame—that stated One World/MessengerFintech has: assigned their current interest and management responsibility to [TEK] for control and operation of the K-315 mine and the K-150 mine. The mines combined have a total value of $5.2bn consisting of precious metals. These assets are secured under Trustee-Custodian Management for the protection of our investors into the IOM utility coin. The Metals produced from the mining properties will be immediately segregated into a secure vault storage under selected Trustee-Custodian Management on behalf of One World Messenger/investors, with all-risk insurance policy to fully protect the physical assets.

These managed assets will be designated for repayment of the Fixed Rate Interest Deposits and portions of the mined metals will be liquidated into the commodity market to generate revenue. Full accounting and auditing will be issued on a regular basis based on the sales of the Physical metals and the assets secured under Trustee depository. A copy of the document is attached as "Exhibit 5."

30. In this document, TEK/Bame utilized a Wyoming registered address and the office address of Bame's law firm, Defendant PLA.

31. On October 3 1, 2019, Bame confirmed to Plaintiff Smith that his investment was secured.

## Default

32. Plaintiffs' investments matured on October 22, 2020.

33. On October 27, 2020, Plaintiffs received identical letters from MessengerFintech advising that due to delays from the COVID-19 pandemic, their funds remained locked away for "investigation" and anticipated an 8 to 16-week delay to collect them. The letter assured them that, again, their capital was 100% asset-backed and controlled by credible trustees.

34. On November I l, 2020, Bame confirmed in an e-mail to Plaintiff Smith that the security for his investment was still being held. After Smith asked what next steps he should take to recover the money from the security he held, Bame confirmed that "[t]he assets are in-ground and would require that mining extraction and refining of the metal assets occur. I believe that Messenger, will be able to meet their commitments in a timelier manner than progressing with the extraction and mining of the metals."

35. When Smith pressed Bame for additional information on ownership rights for the mines, Banne continued to dodge Smith's requests and only provided excuses for MessengerFintench's nonpayment and supposed efforts being made to repay Plaintiffs.

36. On November 25, 2020, Rochard received an e-mail advising him that mining would commence on January 2, 2021.

37. On December 30, 2020, Bame notified Smith that he had been removed as an Independent Trustee on a date uncertain. Neither Smith nor Rochard received any prior notice of this removal or anything regarding how investors such as Plaintiffs would replace Bame.

38. After months of stalling on Smith's attempts to receive documentation on ownership rights to the mines, Barne in early 2021 attempted to loop in Kristensen to the discussions, in conflict with his role as Independent Trustee.

39. On April 7, 2021, Bame stated to Plaintiff Smith "If I had received funds from Messenger to begin mining operations, then I might have had more of an active role." Bame confirmed that, despite his role as an Independent Trustee, he never received any funds from MessengerFintech and failed to secure any portion of Plaintiffs' investments.

40. Plaintiffs have yet to be paid back any portion of their initial investment.

41. Defendant Bame not only influenced, managed, and governed TEK, but given his significant control over TEK, TEK became merely an alter ego of Bame and an instrumentality through which Bame's wrongs were perpetuated against Plaintiffs.

## COUNT I
## Breach of Contract (Defendants One World, TEK, and Bame)

Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

43. Plaintiffs and Defendants are parties to and/or an Independent Trustee of a lawfully enforceable contract, the Agreement, as evidenced by the various documents and correspondence exchanged between the parties and attached to this Amended Complaint. The Agreement required One World/Messenger Fintech to return the Plaintiffs' investments back to them after one year with interest. The Agreement further required TEK and Barne to act as Independent Trustee and secure and control the funds.

44. Barne actively participated in the negotiation and execution of the Agreement.

45. Plaintiffs fully performed their obligations under the Agreement by furnishing the stated investment funds.

46. Defendant One World breached the Agreement by failing to return Plaintiffs' investments with the specified interest. Defendants TEK and Bame have breached the Agreement by failing to

15

secure the Plaintiffs' investment funds through possession or control to ensure repayment to the Plaintiffs.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendants, awarding compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

## COUNT II
### Breach of the Implied Covenant of Good Faith and Fair Dealing (Defendants One World, TEK, and Bame)

47. Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

48. Every contract governed by the law of the State of Wyoming contains an implied covenant of good faith and fair dealing.

49. Plaintiffs behaved in good faith and fully performed their obligations under the Agreement.

50. Defendants, and each of them, breached the covenant of good faith and fair dealing. Despite continuous representations that the investments were secured and the mining operations would soon be underway, Defendants One World and MessengerFintech improperly utilized and mismanaged Plaintiffs' investments by failing (i) to use them for mining operations and (ii) return the capital with interest as specified in the agreements. Defendants TEK and Bame further breached the covenant of good faith and fair dealing by failing to secure any portion of Plaintiffs' assets and did not play any role in ensuring those funds were used to commence mining operations despite representing to Plaintiffs that they had secured their investments.

51. The plaintiffs are retired and have been severely damaged in that they have lost substantial funds that they were counting on to support them financially in their retirement.

WHEREFORE, Plaintiffs pray for entry of judgment in their favour and against Defendants, awarding compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

## COUNT III
### Legal Malpractice (Defendants Bame and IPLA)

52. Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

53. Defendant Bame was a party to an Agreement with Plaintiffs to act as an Independent Trustee and secure their investments. Under the belief that Defendant would secure their investments, Plaintiffs entered into the Agreement.

54. Defendant Bame is a lawyer duly licensed to practice in the State of California and is subject to the California Rules of Professional Conduct.

55. Under Rule 7.1(a) of the California Rules of Professional Conduct, "A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services, A communication is false or misleading if it contains a material misrepresentation of fact or law, or omits a fact necessary to make the communication considered as a whole not materially misleading."

56. Rule 8.4 of the California Rules of Professional Conduct further states that it constitutes "professional misconduct for a lawyer to: (a) violate these rules or the State Bar Act" and "(c) engage in conduct involving dishonesty, fraud, deceit, or reckless or intentional misrepresentation."

57. Defendant Bame has committed professional misconduct by refusing to abide by these Rules of Professional Conduct, including, but not limited to, making false or misleading statements to Plaintiffs as to the status and security of Plaintiffs' assets in that he did not play any role in ensuring those funds were used to commence mining operations despite representing to Plaintiffs that he had secured their investments, and failing to undertake measures to secure Plaintiffs' investments.

58. At all relevant times, defendant Bame was acting within the scope of his employment with Defendant IPLA.

59. Defendants failed to exercise the care, skill, and diligence commonly possessed and exercised by members of the legal profession.
60. As a direct and proximate result of the Defendants' negligent conduct, actions, and failure to act, Plaintiffs suffered damages.
WHEREFORE, Plaintiffs pray for entry of judgment in their favour and against Defendants, awarding compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

## COUNT IV
### Unjust Enrichment (Defendants One World, TEK, and Bame)

61. Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.
62. To the extent permitted by law, this cause of action is pleaded in the alternative.
63. This is an alternative count for unjust enrichment if for any reason any enforceable express contract is not found to have been established between Plaintiffs and Defendants.
64. Regardless of the legal sufficiency of any alternative express contract claims in this Amended Complaint, Plaintiffs conferred a benefit upon Defendants, who have knowledge of that benefit, in that they continue to benefit from Plaintiffs' investment capital.
65. Upon information and belief, Defendants Bame and TEK Resources were compensated for their role as independent trustees.
66. Defendants accepted and retained the conferred benefit.
67. The decision to refuse to compensate Plaintiffs pursuant to the Agreement has unjustly enriched Defendants to the financial detriment of Plaintiffs.
68. Under the circumstances, equity and good conscience required Defendants to refund all money received at Plaintiffs' expense on the basis of money they accepted for use in mining operations.
WHEREFORE, Plaintiffs pray for entry of judgment in their favour and against Defendants, awarding compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

## COUNT V
### Negligence (Defendants One World, TEK, Bame, and IPLA)

69. Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.
70. To the extent permitted by law, this cause of action is pleaded in the alternative.
71. This is an alternative count for negligence if for any reason any enforceable express contract is not formed to have been established between Plaintiffs and Defendants.
72. Defendants owed Plaintiffs a duty to speak truthfully and make a full and fair disclosure at the time of speaking.
73. Defendants breached their duty of care and acted carelessly, negligently, and/or recklessly by representing to Plaintiffs that their investments were 100% asset-backed and secured and controlled by an independent trustee, with an all-risk insurance policy to fully protect the physical mining assets, while neglecting to mention that Plaintiffs' investments were neither controlled, nor secured by the Independent Trustee.
74. At all relevant times, defendant Bame was acting within the scope of his employment with Defendant PLA.
75. Defendants knew or should have known in the exercise of reasonable care that their actions or omissions would harm Plaintiffs.
76. Defendants' failure to exercise reasonable care and breach of their respective duties owed to Plaintiffs are direct and proximate causes of damages sustained by Plaintiffs. Had Defendants exercised any modicum of reasonable care as the law requires, Defendants would have informed

Plaintiffs that the investments were not secured, and Plaintiffs would not have invested in the project, preventing their severe financial detriment.

WHEREFORE, Plaintiffs pray for entry of judgment in their favour and against Defendants, awarding compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

## COUNT VI
### Negligent Supervision (Defendant IPLA)

77. Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

78. To the extent required by law, this cause of action is pleaded in the alternative.

79. At all relevant times, Defendant had the duty to supervise the conduct of its employees and/or attorneys, including attorney Bame, both generally and in connection with the performance of their legal duties. Defendant also owed Plaintiffs a duty of care to make reasonable efforts to ensure that (i) its law firm had in effect measures giving reasonable assurance that all lawyers in the firm comply with the California Rules of Professional Conduct; and (ii) its attorneys comply with the California Rules of Professional Conduct.

80. Defendant breached its duty by failing to adequately supervise Bame and/or Incorporate measures to detect attorney noncompliance with the California Rules of Professional Conduct.

81. Defendant's failure to exercise reasonable care and breach of its respective duty owed to Plaintiffs are direct and proximate causes of damages sustained by Plaintiffs. Had Defendant exercised any modicum of reasonable care as the law requires, Bame's misrepresentations would not have occurred, preventing Plaintiffs' severe financial detriment.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendants, awarding compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants and award Plaintiffs compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

Respectfully responded,


Kent Kristensen.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.