# EXHIBIT B

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

RALPH PETER JOHN HENRY
ROCHARD, an individual; and CON
SMITH, an individual,

    *Plaintiffs,*

  v.

ONE WORLD MESSENGER, a
Wyoming Corporation a/k/a ONE
WORLD MESSENGER LLC; TEK
RESOURCES LLC, a Wyoming Limited
Liability Company; JAMES EDWARD
BAME, an individual; and IPLA P.A., a
California Professional Association.

    *Defendants.*

Case No. 2:23-cv-00194-ABJ

**SECOND AMENDED COMPLAINT**

**(1) Breach of Contract**
**(2) Breach of the Implied Covenant of**
**Good Faith and Fair Dealing**
(3) Legal Malpractice
**(3) Breach of Fiduciary Duty**
**(4) Fraud**
**(5) Aiding and Abetting Fraud**
**(6) Civil Conspiracy**
**(7) Negligent Misrepresentation**
(4)(8)  **Unjust Enrichment**
(5) Negligence
(6)(9)  **Negligent supervision**

## SECOND AMENDED COMPLAINT

By and through undersigned counsel, Plaintiffs Ralph Peter John Henry Rochard

("Rochard") and Con Smith ("Smith") (collectively "Plaintiffs"), file this Second Amended

Complaint seeking damages and sue Defendants One World Messenger aka One World Messenger

LLC[1], TEK Resources LLC, James Edward Bame, and IPLA P.A. (collectively "Defendants") for

(i) breach of contract; (ii) breach of the implied covenant of good faith and fair dealing; (iii) legal

malpractice breach of fiduciary duty; (iv) unjust enrichment fraud; (v) negligence; aiding and

---

[1] One World Messenger is a Wyoming Corporation. Documents at issue in this case refer to it
simultaneously with its registration number with the Wyoming Secretary of State but with the
name "One World Messenger LLC." There is no LLC bearing this name. For purposes of clarity
compelled by service issues, this Amended Complaint solely addresses this issue so that the
registered agent of One World Messenger accepts service.

abetting fraud; (vi) civil conspiracy (vii) negligent supervisionmisrepresentation; (viii) unjust enrichment; and (ix) negligent misrepresentation, and allege as follows:

**INTRODUCTION**

1.    This isDefendants orchestrated a breach of contract action against two Wyoming companies and an attorney acting as independent trustee who failedscheme to properly manage and returnobtain Plaintiffs' capital pursuant to the parties' agreement. Plaintiffs invested based on Defendants' representations made in the application form regarding an Independent Trustee and assurances that the defendant bank was regulated by the Swiss Financial Market Supervisory Authority (FINMA).

2.1.    Due to Defendants' misrepresentations, Plaintiffs believed their money would be usedinvestments to fund the operation of a viable mining property in the United States with experienced mining operatorsminers conducting the operations. Plaintiffs anticipated that the production and sale of metals retrieved would fund the full return of their capital with interest as specified in the parties' agreement. Pursuant to the agreement, Plaintiffs were to receive the full return of their investment, with specified interest.agreements.

2.    Plaintiffs invested based on representations that defendant attorney James Edward Bame and independent trustee would immediately secure and/or freeze their investments and commence mining operations, as well as assurances that the defendant bank was regulated by the Swiss Financial Market Supervisory Authority (FINMA).

3.    Defendant Bame wrote to Plaintiffs that their investment was fully protected and asset backed. Bame knew this to be false. In reality, Plaintiffs' investments were entirely unsecured and uninsured. Plaintiffs relied on these assurances to their severe financial detriment.

3.4.    After the one-year term period of the agreement elapsed, ~~Plaintiffs~~ Defendants continued to attempt to conceal the fraudulent nature of this investment scheme and complete loss of Plaintiffs' assets. Plaintiffs eventually discovered that Defendants mismanaged, diverted, and ~~failed to secure~~never secured their funds. ~~The Independent Trustee attorney allowed ill-suited and inexperienced individuals to seize Plaintiffs' assets without recourse, to their severe financial detriment.~~

5.    Bame either knew the mining investment was a fraudulent scheme from the beginning, or failed to perform any due diligence that would have immediately unveiled the fraudulent nature of the scheme, before allowing its name to be utilized to bolster the credibility of otherwise sham transactions. Bame failed to protect Plaintiffs' assets.

## PARTIES

4.6.    Rochard is an individual who resides in Courçon, France. At all times relevant to this proceeding, he resided in Abu Dhabi, United Arab Emirates.

5.7.    Smith is an individual who resides in Cork, Ireland.

6.8.    Defendant One World Messenger ("One World") is a Wyoming corporation with a principal place of business at 1309 Coffeen Avenue, Suite 1200, Sheridan, Wyoming 82801. One World maintains its registered agent in Wyoming with Cloud Peak Law Group, P.C., 1095 Sugar View Drive, Suite 100, Sheridan, Wyoming 82801. One World has also identified itself from time to time as "One World Messenger LLC" although it is not a limited liability corporation in Wyoming or anywhere else.

7.9.    Defendant TEK Resources LLC ("TEK") is a Wyoming corporation that, at all relevant times, maintained a registered address at 745 Lane 36, Burlington, Wyoming 82411. Its registration number with the Wyoming Secretary of State is 2013-000655933.

8.10.   Defendant James Edward Bame ("Bame") is an individual who, upon information and belief, resides in Colorado. At all times relevant to this proceeding, Bame was the owner and sole member of TEK and is also an attorney licensed to practice in the State of California. His California Attorney IDBar number is 204617.

9.11.   Defendant IPLA P.A. ("IPLA") is a California corporation with an office located at 3580 Wilshire Boulevard, 17th Floor, Los Angeles, California 90010. At all relevant times, IPLA employed Defendant Bame as an attorney. A copy of his previous attorney registration withlisting IPLA is attached as "*Exhibit "1."*2

10.12.   At all times relevant to this proceeding, Bame functioned as an agent and owner of TEK in that he exercised sole control and domination over TEK's affairs. Documents filed with the Wyoming Secretary of State indicate Bame is the sole owner of TEK. Bame signed all the relevant documents on TEK's behalf in this regard. TEK could not take any action without Bame's direction and approval.

13.     Defendant Bame not only influenced, managed, and governed TEK, but given his significant control over TEK, TEK became merely an alter ego of Bame and an instrumentality through which Bame's wrongs were perpetuated against Plaintiffs.

## RELEVANT NON-PARTIES

11.14.   MessengerFintech GMBH ("MessengerFintech") is a Swiss corporation located at Grafenauweg 10, Zug 6300, Switzerland. MessengerFintech is the parent company of One World. MessengerFintech bears Company Registration Number:170.4.002.326-5 and UID number: CHE-

---

2 After Plaintiffs filed their Complaint (ECF 1) in this action, Defendant Bame amended his attorney registration with the California State Bar and listed his employer as "Law Offices of James Bame" at the same address as Defendant IPLA's office.

101-029-610. Upon information and belief, MessengerFintech was liquidated on December 19, 2019.

~~12.~~15.  Kent Kristensen ("Kristensen") is a Danish individual who, upon information and belief, currently resides in Malaga, Spain.  At all relevant times, Kristenson was the sole owner of MessengerFintech and One World. He was also the Chief Executive Officer of Messenger Bank of MessengerFintech ("Messenger Bank").

## JURISDICTION AND VENUE

~~13.~~16.  This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (a)(1), as there is complete diversity of citizenship between Plaintiffs and each Defendant, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

~~14.~~17.  The Court has personal jurisdiction over Defendants because they and/or their agents reside and/or transact business in this District.

~~15.~~18.  This District is the proper venue for the dispute because the District has personal jurisdiction over defendants pursuant to 28 U.S.C.§ 1391(b)(3).

## GENERAL ALLEGATIONS

### The Agreement

~~16.~~19.  In October 2019, Rochard's wealth manager in Dubai introduced him to an investment opportunity to fund the mining of gold deposits in the United States and to later sell the mined metal.

~~17.~~20.  On October 15, 2019, Rochard completed the Individual Reservation Form – Messenger Fintech Fixed Rate Account application form from Messenger Bank of MessengerFintech, and opted for a 12% return after a twelve-month investment term. The Application stated that "Investors will have a 7-day cooling off period from date of application to

withdraw their application and funds to be returned without Interest." A copy of the application form is attached as *"Exhibit "2."*

18.21. Kristensen, CEO of Messenger Bank, called Rochard to assure him of the investment's authenticity and convinced Plaintiff to increase his investment.

22.    On information and belief, Kristensen has a long history of fraudulent activity. He was removed as CEO of a company after one of the company's owners reported to the Securities and Exchange Commission that Kristensen collected $650 million from deals he executed by unlawfully using the company's trademark without proper authorization and registering companies in his own name in various jurisdictions. A copy of the press release is attached as *Exhibit "3".* He was also sentenced to prison in Romania in 2012 for fraud. A copy of that article is attached as *Exhibit "4."*

19.23. Both Rochard's broker and Gary O'Driscoll, Head of Private Clients at Clear Treasury, gave him instructions for which bank to transfer the funds to purportedly obtain the best exchange rate for the investment withfacilitated by MessengerFintech.

20.24. Rochard grew hesitant about the investment, the company and its operations. He attempted to contact O'Driscoll directly to stop the transfer but was informed the process had already been completed on October 21, 2019.

21.25. On November 14, 2019, Gary James Wood, then Senior Manager at MessengerFintech, informed Rochard that return of his investment was impossible because his funds were already "frozen" in a smart contract.[3]

---

[3] "A smart contract is computer code that is stored directly on the Ethereum blockchain, and which automatically executes all or parts of an agreement, pursuant to its specifications." *Van Loon v. Dep't of Treasury*, No. 1:23-CV-312-RP, 2023 U.S. Dist. LEXIS 144035, at *8 (W.D. Tex. Aug. 17, 2023)

22.26.  On November 16, 2019, Rochard received a copy of the One World Messenger MBM Investment Agreement ("Agreement") dated October 22, 2019. Mr. Wood signed the Agreement, a copy of which is attached as "*Exhibit 3"5."*

23.27.  The Agreement states that a smart contract transaction was created and guaranteed by One World's MBMX digital coin. The Agreement described MBM as a "precious metal coin backed by 65% Gold and 35% Platinum." The metals were "secured under Trustee Management giving your investment extra security." According to the Agreement, the asset-backed MBM cryptocurrency was secured on the company's blockchain technology through the smart contract, but the link to the smart contract was at all relevant times defunct. Defendant TEK was listed as the independent trustee next to the security safe keeping receipt code and smart contract link, implying that TEK immediately gained possession of Plaintiffs' funds in the smart contract to manage. *Id*.

24.28.  Plaintiff Rochard's Agreement called for his investment of $149,132.00 to remain frozen for twelve months and, upon maturity, the contracted value would be released along with 12% interest for a total of $167,027.00. *Id.*

25.29.  Plaintiff Smith executed his Agreement on October 23, 2019, a copy of which is attached as "*Exhibit 4"6."* Plaintiff Smith's Agreement called for his investment of $200,000.00 to remain frozen for twelve months and, upon maturity, the contracted value would be released along with 20% interest for a total of $240,000.00. The Agreement also provided that Smith would receive 10% interest if repayment werewas not made within thirty days of the due date, and an additional 5% in interest every thirty days that the payment remained outstanding. *Id.*

26.30.  For Plaintiffs, ~~the cruciala~~ material selling point of the Agreement was that ~~it declared that~~ the metals were "secured under Trustee Management giving [~~Plaintiff's~~Plaintiffs'] investment extra security."

31.     Given the nature of the Defendants' relationship, Plaintiffs believe Defendant TEK—and its sole owner Defendant Bame—had a preexisting agreement with One World in which TEK/Bame would be listed as independent trustee on the investment agreements.

32.     TEK/Bame were aware that their names were being used to provide authenticity to the transactions, yet they were not given access to the smart contract that Plaintiffs' investments were apparently "frozen" in to commence mining operations. TEK/Bame either knew the mining investment was a fraudulent scheme from the beginning and intended to claim ignorance of same, or failed to perform any due diligence that would have immediately unveiled the fraudulent nature of the scheme, before allowing their name to be utilized to bolster the credibility of otherwise sham transactions.

27.33.  Kristensen sent a welcome letter to Rochard on October 23, 2019, which stated that "Investors can now invest with the understanding their capital is 100% asset-backed and controlled by credible trustees." Smith received a similar letter.

~~28.     The Agreement listed Defendant TEK—and its owner Defendant Bame—as the independent trustee.~~

34.     Mr. Bame—on behalf of TEK—also sent Plaintiff Smtih a letter on October 31, 2019, which stated "I am writing to confirm your investment is fully protected and 100% remote asset backed by 65% Gold and 35% Platinum. I James E Bame the attorney and owner of Tek Resources have full management over the in-ground assets and oversight in any of the mining

process." A copy of the letter is attached as *Exhibit "7."* TEK/Bame assisted One World's scheme to conceal the completely at-risk nature of Plaintiffs' investments.

35.    Mr. Bame's email to Mr. Smith describes attachment of the letter "confirming the security of your investment."

~~29.~~36.  Plaintiffs then received a document ("Document") from TEK—signed by Bame— that stated One World/MessengerFintech has:

> assigned their current interest and management responsibility to [TEK] for control and operation of the K-315 mine and the K-150 mine[4]. The mines combined have a total value of $5.2bn consisting of precious metals. These assets are secured under Trustee-Custodian Management for the protection of our investors into the MBM utility coin.
>
> The Metals produced from the mining properties will be immediately segregated into a secure vault storage under selected Trustee-Custodian Management on behalf of One World Messenger/investors, with all-risk insurance policy to fully protect the physical assets.
>
> These managed assets will be designated for repayment of the Fixed Rate Interest Deposits and portions of the mined metals will be liquidated into the commodity market to generate revenue. Full accounting and auditing will be issued on a regular basis based on the sales of the Physical metals and the assets secured under Trustee depository.

A copy of the ~~document~~Document is attached as *"Exhibit ~~5~~"8."*

37.    Plaintiffs' funds were not "frozen" but rather improperly diverted.

38.    Despite Bame's representations, Plaintiffs' investments were never really secured. TEK/Bame later admitted they never had any ability to commence mining operations. To date, Plaintiffs have not been able to access their investments so that they may be returned.

39.    Plaintiffs' investments in actuality were neither protected nor asset-backed. Had Plaintiffs known this, they would have never invested with Defendants.

---

[4] The K-315 and K-150 mines were allegedly located in Nevada and Texas, respectively.

30.40.  In both this document and the letter to Plaintiff Smith on October 31, TEK/Bame utilized a Wyoming registered address and the office address of Bame's law firm, Defendant IPLA.

31.    On October 31, 2019, Bame confirmed to Plaintiff Smith that his investment was secured.

## Default

32.41.  Plaintiffs' investments matured on October 22, 2020.

33.42.  On October 27, 2020, Plaintiffs received identical letters from MessengerFintech advising that due to delays from the COVID-19 pandemic, their funds remained locked away for "investigation" and anticipated an 8 to 16-week delay to collect them. The letter assured them that, again, their capital was 100% asset-backed and controlled by credible trustees.

34.43.  On November 11, 202010, 2020, Plaintiff Smith asked Bame to confirm that he still held security for $240,000.00 in Plaintiffs' names. A copy of correspondence between Plaintiff Smith and defendant Bame is attached as *Exhibit "9."* The same day, Bame confirmed in an e-mail to Plaintiff Smith that the security for his investment *was still being held*. After Smith asked what next steps he should take to recover the money from the security he held, Bame confirmed that "[t]he assets are in-ground and would require that mining extraction and refining of the metal assets occur. I believe that Messenger, will be able to meet their commitments in a more timely manner than progressing with the extraction and mining of the metals." *Id.*

35.44.  When Smith pressed Bame for additional information on ownership rights for the mines, Bame continued to dodge Smith's requests and only provided excuses for MessengerFintench's nonpayment and supposed efforts being made to repay Plaintiffs. *Id.*

36.45.  On November 25, 2020, Rochard received an e-mail advising him that mining would commence on January 2, 2021.

46.    On December 30, 2020, Bame notified Smith that he had been removed as Independent Trustee on a date uncertain. *See **Exhibit "9," ** supra.* Neither Smith nor Rochard received any prior notice of this removal or ~~anything~~any information regarding how investors such as Plaintiffs would replace Bame.

~~37.~~47.  Nonetheless, over the course of several months, Bame assured Plaintiff Smith that he would "encourage [MessengerFintech] to honor their commitments and have provided them with the information that I have on viable mining operators" that he would "also talk with MF and check on status, for whatever benefit that is," and that he would "continue to prompt Messenger to fulfill that obligation [to have their investments repaid]." Bame thus undertook to continue serving as independent trustee between Plaintiffs and One World.

~~38.~~48. After months of stalling on Smith's attempts to receive documentation on ownership rights to the mines, Bame in early 2021 attempted to loop in Kristensen to the discussions~~, in conflict with his role as Independent Trustee.~~ with Plaintiffs.

~~39.~~49.  On April 7, 2021, Bame stated to Plaintiff Smith "If I had received funds from Messenger to begin mining operations, then I might have had more of an active role." Bame confirmed that, despite his role as Independent Trustee, he never received *any* funds from MessengerFintech and failed to secure any portion of Plaintiffs' investments. *See **Exhibit 9.*** Bame also requested that Smith allow him to "focus [his] efforts on guiding Messenger toward prioritizing [his] payment . . . I would like to willingly work as I can to have your re-payment prioritized by Messenger." Bame thus continued to ratify and assert his independent trustee duties for Plaintiffs.

~~40.~~50.  Plaintiffs have yet to be paid back any portion of their initial investment by anyone.

~~41.   Defendant Bame not only influenced, managed, and governed TEK, but given his significant control over TEK, TEK became merely an alter ego of Bame and an instrumentality through which Bame's wrongs were perpetuated against Plaintiffs.~~

51.   Bame never withdrew from his independent trustee duties under the investment agreements Plaintiffs executed.

## COUNT I
**Breach of Contract (Defendants One World, TEK, and Bame)**

~~42.~~52.  Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

53.   To the extent permitted by law, this cause of action is pleaded in the alternative.

~~43.~~54.  Plaintiffs and ~~Defendants~~Defendant One World are parties to ~~and/or an Independent Trustee of~~ a lawfully enforceable contract, the Agreement, as evidenced by the various documents and correspondence exchanged between the parties and attached to this Second Amended Complaint. The Agreement required One World/Messenger Fintech to return Plaintiffs' investments back to them after one year with interest. The Agreement further required TEK and Bame to act as Independent Trustee and secure and control the funds.

~~44.   Bame actively participated in the negotiation and execution of the Agreement.~~

55.   Although Defendants TEK/Bame did not sign the Agreement, their subsequent actions ratified their obligations therein. As set forth above, TEK/Bame and One World had a preexisting agreement that One World would delegate to TEK/Bame management responsibility for control and operation of the mines. After Plaintiffs executed their respective Agreements, TEK/Bame then contacted them to notify them that One World had "assigned their current interest and management responsibility to [TEK] for control and operation of the K-315 mine and the K-

150 mine." *See **Exhibit "8**,*" supra*. Thus, TEK/Bame can be held liable for breach of the Agreements.

~~45.~~56.  Plaintiffs fully performed their obligations under the Agreement by furnishing the stated investment funds.

57.    Defendant One World breached the Agreement by failing to return Plaintiffs' investments with the specified interest.

~~46.~~58.  Defendants TEK and Bame ~~have~~ breached the Agreement by, among other things, failing to secure and insure repayment of Plaintiffs' investments, failing to facilitate delivery of such investments from MessengerFintech to TEK and act independently with respect to managing the investment ~~funds through possession or control to ensure repayment to Plaintiffs~~assets.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendants, awarding compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

## <u>COUNT II</u>
### Breach of the Implied Covenant of Good Faith and Fair Dealing (Defendants One World, TEK, and Bame)

~~47.~~59.  Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

60.    To the extent permitted by law, this cause of action is pleaded in the alternative.

~~48.~~61.  Every contract governed by the law of the State of Wyoming contains an implied covenant of good faith and fair dealing.

~~49.~~62.  Plaintiffs behaved in good faith and fully performed their obligations under the Agreement.

50.63.  Defendants, and each of them, breached the covenant of good faith and fair dealing. Despite continuous representations that the investments were secured and the/or "frozen" and mining operations would soon be underway, Defendants One World and MessengerFintech improperly utilized and mismanaged Plaintiffs' investments by failing (i) to use them for mining operations and (ii) return the capital with interest as specified in the agreements. Defendants TEK and Bame further breached the covenant of good faith and fair dealing by failing to (i) secure any portion of Plaintiffs' assets; (ii) obtain possession over those funds before they were improperly diverted, and did not play any role in ensuring/or (iii) ensure those funds were used to commence mining operations despite representing to Plaintiffs that they had secured their investments.

51.64.  Plaintiffs are retired and have been severely damaged in that they have lost substantial funds that they were counting on to support them financially in their retirement.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendants, awarding compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

### COUNT III
### Legal MalpracticeBreach of Fiduciary Duty (Defendants BameTEK and IPLABame)

52.65.  Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

66.     Defendant To the extent permitted by law, this cause of action is pleaded in the alternative.

67.     Defendants TEK and Bame was a party to an Agreement with owed Plaintiffs fiduciary duties as independent trustee to provide honest advice, full disclosure, and act in good

faith. Plaintiffs trusted in the integrity of Bame as an attorney assuming the role of trustee, and Defendants voluntarily assumed and accepted such confidence.

68.     Defendants breached their fiduciary duties to ~~act as~~ Plaintiffs by, among other things, (i) concealing the fraudulent nature of the investment scheme; (ii) failing to conduct any due diligence which would reveal the fraudulent nature of the investment scheme; (iii) ratifying representations of One World  that TEK had immediate control over the mines securing their investment to provide legitimacy to the scam that One World needed to induce investment; (iv) failing to inform Plaintiffs that their investments were never "frozen" in the smart contract but rather wrongfully diverted; (v) failing to timely warn Plaintiffs that they never received the funds from One World to begin mining operations; (vi) representing to Plaintiffs that their investments were fully protected and 100% asset backed by 65% Gold and 35% Platinum when Defendants lacked the financial ability to begin mining operations to secure the investments; (vii) representing that Bame had full oversight over the mining process when he could not begin the mining process; and/or (viii) falsely assuring Plaintiffs that One World would be able to repay their investments.

69.     Defendants' breach of duty caused Plaintiffs' harm. Plaintiffs invested their money based on Defendants' representations that the funds would be secured and the security managed by an Independent Trustee with actual control over the mines.

70.     Defendants' failure to withdraw as independent trustee for Plaintiffs tolled the running of the statute of limitations under the continuous representation doctrine.

71.     Plaintiffs have been harmed by Defendants' breaches of their fiduciary duty in an amount no less than $400,000.00.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendants, awarding compensatory damages of no less than $400,000.00, along with consequential damages,

pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

### COUNT IV
### Fraud (Defendant One World)

72.    Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

73.    To the extent permitted by law, this cause of action is pleaded in the alternative.

74.    ~~and secure their investments. Under the belief that~~ Defendant ~~would~~ One World made material, false representations to Plaintiffs during the solicitation of Plaintiffs' investments that Plaintiffs' investments were "frozen" and "secured in" "the full 12-month term." The false representations were made to deceive and lull Plaintiffs into believing that their investments were protected to induce their investment when in fact they were not.

~~53.~~75.  Defendant also fraudulently omitted and concealed from their communications and Agreements with Plaintiffs that: (i) Plaintiffs' funds were not frozen or secure ~~their investments, Plaintiffs entered into the Agreement~~in the smart contract, but rather immediately diverted to Defendant for improper use; (ii) MBM was not in actuality backed by 65% gold and 35% platinum because the mining would never commence since Plaintiffs' funds were misappropriated; and (iii) Defendants TEK/Bame did not have access to the funds deposited into the smart contract and could not manage the funds for the benefit of Plaintiffs.

76.    Plaintiffs reasonably believed that Defendant's representations were true.

77.    Plaintiffs relied on these representations by executing the Agreements and investing over $400,000.00. This information was essential to Plaintiffs' investment decision, as the security

of the investment and role of independent trustee lent credibility to an otherwise disreputable transaction on the blockchain.

78.    Plaintiffs have yet to receive a return of any portion of their investment.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendant, awarding compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

## COUNT V
### Aiding and Abetting Fraud (Defendants TEK and Bame)

79.    Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

80.    To the extent permitted by law, this cause of action is pleaded in the alternative.

81.    Defendant One World defrauded Plaintiffs in these transactions.

82.    Defendants TEK and Bame participated in convincing Plaintiffs to invest in the scheme.

83.    Defendants TEK and Bame substantially assisted in the scheme to defraud Plaintiffs by, among other things, concealing material information from Plaintiffs that (i) Defendants never conducted any due diligence or prudence in vetting One World's fraudulent investment scheme before agreeing to serve as independent trustee and allowing One World to represent Defendants as an "Independent Trustee" for the investment; (ii) Defendants never took possession of or otherwise secured Plaintiffs' assets; (iii) Defendants never had, and never obtained, access to the smart contract which appears immediately above in the Agreements; (iv) Plaintiffs' funds were never "Frozen" or "secured in" the smart contract; and (v) the investments in actuality were not

asset-backed because Defendants lacked the financial ability to begin mining operations to secure the investments.

84.     Defendants further substantially assisted in the scheme to defraud Plaintiffs by providing false information that Plaintiffs' investment was "fully protected and 100% remote asset backed by 65% Gold and 35% Platinum. I James E Bame the attorney and owner of Tek Resources have full management over the in-ground assets and oversight in any of the mining process."

85.     Defendants knew that this information was false and/or omitted material information.

86.     The representations were made to induce Plaintiffs to enter into the Investment Agreements and lull and/or prevent Plaintiffs from taking legal action against Defendants.

87.     Plaintiff reasonably believed the representations from Bame, a licensed attorney subject to a duty of candor, were true. Plaintiffs had no reason to suspect that a licensed attorney like Bame would provide false information to them or omit material information.

88.     Plaintiffs relied on the misrepresentations to their detriment and have not recovered any portion of their lost investments.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendants, awarding compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

## COUNT VI
### Civil Conspiracy (Defendants One World, TEK, and Bame)

89.     Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

90.     To the extent permitted by law, this cause of action is pleaded in the alternative.

91.     Defendants One World, TEK, and Bame conspired to commit fraud against Plaintiffs by committing one or more overt acts pursuant to a common design. Each of the Defendants were united by a common interest to induce Plaintiffs' investments, for each of their personal benefit. Defendant One World wanted to seize Plaintiffs' investments for personal, improper use, and Defendants TEK and Bame sought to continue a professional relationship with Defendant One World. Defendants TEK and Bame further sought to conceal their complete lack of due diligence and prudence in vetting Defendant One World prior to associating itself with this transaction.

92.     Defendants, in furtherance of the common design, committed one or more overt acts to accomplishment the fraudulent scheme to unlawfully divert Plaintiffs assets by, among other things, (i) entering into an agreement in which TEK/Bame authorized One World to list TEK as independent trustee on the investment agreements, to bolster an otherwise uncredible transaction; (ii) representing to Plaintiffs numerous times that their investments were frozen and secured in the smart contract, implying immediate possession by TEK/Bame; and (iii) concealing their wrongdoing by providing illegitimate excuses for the delay in receiving return of their investment.

93.     Each of the aforementioned acts are wrongful acts taken with the intention and effect of depriving Plaintiffs of any chance of repayment of their investment, lull them into inaction and thus attempt to run statutes of limitations as to claims that could be asserted against Defendants.  There was a meeting of the minds between and among Defendants to commit the unlawful acts alleged herein.

94.     Plaintiffs have been damaged as a direct and proximate result of the conspiracy.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendants, awarding compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

## COUNT VII
### Negligent Misrepresentation (Defendants TEK and Bame)

95.    Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

96.    To the extent permitted by law, this cause of action is pleaded in the alternative.

97.    Defendants owed Plaintiffs a duty to speak truthfully and make a full and fair disclosure at the time of speaking.

98.    Defendants had a duty to use reasonable care in informing Plaintiffs of their lack of prudence and due diligence in investigating One World before agreeing to vouch for the investment's credibility and act as independent trustee. Defendants failed to disclose the absence of security and insurance for and control over Plaintiffs' funds deposited into the smart contract.

99.    By failing to provide accurate information regarding the absence of security and insurance for Plaintiffs' funds deposited into the smart contract, and failing to inform Plaintiffs that mining, extraction, and refining of the metal assets could not occur without first receiving funds from One World, Defendants breached their duty to speak truthfully and make a full and fair disclosure at the time of speaking.

100.    Plaintiffs justifiably relied on the incomplete and false information supplied by Defendants.

101.    As a result of the Plaintiffs' reliance, Plaintiffs suffered economic damages.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendants, awarding compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

## COUNT VIII
### Unjust Enrichment (Defendants One World, TEK, and Bame)

102.    Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

103.    To the extent permitted by law, this cause of action is pleaded in the alternative.

104.    This is an alternative count for unjust enrichment if for any reason any enforceable express contract or special relationship is not found to have been established between Plaintiffs and Defendants.

105.    Regardless of the legal sufficiency of any alternative contract claims in this Second Amended Complaint, Plaintiffs provided investment funds to Defendant, One World, who continues to benefit from Plaintiffs' investment capital.

106.    Upon information and belief, Defendants Bame and TEK Resources were compensated for their role as independent trustee.

107.    Defendants accepted and retained the conferred benefit.

108.    The decision to refuse to compensate Plaintiffs pursuant to the Agreement has unjustly enriched Defendants to the financial detriment of Plaintiffs.

109.    Under the circumstances, equity and good conscience required Defendants to refund all money received at Plaintiffs' expense on the basis of money they accepted for use in mining operations.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendants, awarding compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

**COUNT IX**
**Negligent Supervision (Defendant IPLA)**

110.   Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

111.   To the extent required by law, this cause of action is pleaded in the alternative.

~~54.~~112.Defendant Bame is a lawyer duly licensed to practice in the State of California and is subject to the California Rules of Professional Conduct.

~~55.~~113.Under Rule 7.1(a) of the California Rules of Professional Conduct, "A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it contains a material misrepresentation of fact or law, or omits a fact necessary to make the communication considered as a whole not materially misleading."

~~56.~~114.Rule 8.4 of the California Rules of Professional Conduct further states that it constitutes "professional misconduct for a lawyer to: (a) violate these rules or the State Bar Act" and "(c) engage in conduct involving dishonesty, fraud, deceit, or reckless or intentional misrepresentation."

~~57.~~115.Defendant Bame has committed professional misconduct by refusing to abide by these Rules of Professional Conduct, including, but not limited to, making false or misleading statements to Plaintiffs as to the status and security of Plaintiffs' assets in that he did not play any role in ensuring those funds were used to commence mining operations despite representing to

Plaintiffs that he had secured their investments, and failing to undertake measures to secure Plaintiffs' investments.

116.   Defendant Bame further breached his fiduciary duty to Plaintiffs as independent trustee in the manner as set forth in this Second Amended Complaint.

58.117. At all relevant times, defendantDefendant Bame was acting withinoutside the scope of his employment with Defendant IPLA.

59.   Defendants failed to exercise the care, skill, and diligence commonly possessed and exercised by members of the legal profession.

60.1.   As a direct and proximate result of the Defendants' negligent conduct, actions, and failure to act, Plaintiffs suffered damages.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendants, awarding compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

<strong>COUNT IV</strong><br><strong>Unjust Enrichment (Defendants One World, TEK, and Bame)</strong>

61.1.   Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

62.1.   To the extent permitted by law, this cause of action is pleaded in the alternative.

63.   This is an alternative count for unjust enrichment if for any reason any enforceable express contract is not found to have been established between Plaintiffs and Defendants.

64.1.   Regardless of the legal sufficiency of any alternative express contract claims in this Amended Complaint, Plaintiffs conferred a benefit upon Defendants, who have knowledge of that benefit, in that they continue to benefit from Plaintiffs' investment capital.

65.1.    Upon information and belief, Defendants Bame and TEK Resources were compensated for their role as independent trustee.

66.1.    Defendants accepted and retained the conferred benefit.

67.1.    The decision to refuse to compensate Plaintiffs pursuant to the Agreement has unjustly enriched Defendants to the financial detriment of Plaintiffs.

68.1.    Under the circumstances, equity and good conscience required Defendants to refund all money received at Plaintiffs' expense on the basis of money they accepted for use in mining operations.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendants, awarding compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

### COUNT V
### Negligence (Defendants One World, TEK, Bame, and IPLA)

69.1.    Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

70.1.    To the extent permitted by law, this cause of action is pleaded in the alternative.

71.    This is an alternative count for negligence if for any reason any enforceable express contract is not found to have been established between Plaintiffs and Defendants.

72.1.    Defendants owed Plaintiffs a duty to speak truthfully and make a full and fair disclosure at the time of speaking.

73.    Defendants breached their duty of care and acted carelessly, negligently, and/or recklessly by representing to Plaintiffs that their investments were 100% asset-backed and secured and controlled by an independent trustee, with an all-risk insurance policy to fully protect the physical mining assets, while neglecting to mention that Plaintiffs' investments were neither controlled, nor secured by the Independent Trustee.

74.    At all relevant times, defendant Bame was acting within the scope of his employment with Defendant IPLA.

75.    Defendants knew or should have known in the exercise of reasonable care that their actions or omissions would harm Plaintiffs.

76.    Defendants' failure to exercise reasonable care and breach of their respective duties owed to Plaintiffs are direct and proximate causes of damages sustained by Plaintiffs. Had Defendants exercised any modicum of reasonable care as the law requires, Defendants would have informed Plaintiffs that the investments were not secured, and Plaintiffs would not have invested in the project, preventing their severe financial detriment.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendants, awarding compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

## COUNT VI
### Negligent Supervision (Defendant IPLA)

77.1.    Plaintiffs incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

78.1.    To the extent required by law, this cause of action is pleaded in the alternative.

79.118.    At all relevant times, Defendant had the duty to supervise the conduct of its employees and/or attorneys, including attorney Bame, both generally and in connection with the performance of their legal duties. Defendant also owed Plaintiffs a duty of care to make reasonable efforts to ensure that (i) its law firm had in effect measures giving reasonable assurance that all lawyers in the firm comply with the California Rules of Professional Conduct; and (ii) its attorneys comply with the California Rules of Professional Conduct.

80.119.    Defendant breached its duty by failing to adequately supervise Bame and/or incorporate measures to detect attorney noncompliance with the California Rules of Professional Conduct.

81.120.    Defendant's failure to exercise reasonable care and breach of its respective duty owed to Plaintiffs are direct and proximate causes of damages sustained by Plaintiffs. Had Defendant exercised any modicum of reasonable care as the law requires, Bame's misrepresentations would not have occurred, preventing Plaintiffs' severe financial detriment.

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendant, awarding compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable. WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against Defendants, awarding compensatory damages of no less than $400,000.00, along with consequential damages, pre-judgment and post-judgment interest, costs, and such other and further relief the Court deems just, proper, and equitable.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants and award Plaintiffs compensatory damages of no less than $400,000.00, along with

consequential damages, pre-judgment and post-judgment interest, costs, attorneys' fees/costs and

such other and further relief the Court deems just, proper, and equitable.

### DEMAND FOR JURY TRIAL

PLAINTIFFS, RALPH PETER JOHN HENRY ROCHARD and CON SMITH, demand a

jury trial of all issues triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.


Dated: ~~November 10~~December 26, 2023


Respectfully Submitted,


**LAW OFFICES OF ROBERT V. CORNISH, JR., PC**


*/s/ Robert V. Cornish, Jr.*
**ROBERT V. CORNISH, JR.**
680 South Cache Street, Suite 100
P.O. Box 12200
Jackson, WY 83001
Office: (307) 264-0535
Email: rcornish@rcornishlaw.com

*Attorney for Plaintiffs*